IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ACCO BRANDS, INC., d/b/a KENSINGTON
TECHNOLOGY GROUP,

        Plaintiff,

  v.

PC GUARDIAN ANTI-THEFT PRODUCTS,
INC., et al.,

        Defendants.
_____/

No. 04-03526 SI

**ORDER RE: CLAIM CONSTRUCTION**

On November 14, 2007, the Court held a claim construction hearing in this case. After consideration of the parties' papers and presentations, the Court construes the claims at issue as follows.

**BACKGROUND**

`Plaintiff ACCO Brands, Inc., d/b/a Kensington Technology Group is the owner of U.S. Patent No. 6,553,794 ("the '794 patent'"), which is the subject of this claim construction. The '794 patent covers a method for attaching a lock to a portable computer. Defendants PC Guardian Anti-Theft Products, Inc., and Fellowes, Inc., are the makers of the Notebook Guardian line of locks for laptop computers. Plaintiff claims that defendants' products infringe the '794 patent.

On September 20, 2005, this Court issued an order denying defendants' motion for summary judgment on issues of inequitable conduct and unenforceability and denying plaintiff's motion for summary judgment on infringement without prejudice. That order also set a claim construction schedule and limited claim construction "only [to] the terms 'maintaining said locked configuration by use of a pin' and 'wherein said pin extends into said security slot,'" September 20, 2005 Order at 13, both

because these two terms required further elaboration and because defendants failed to comply with the deadlines and procedures required by the local rules, *id.* at 8-9 n.7. The parties initially filed claim construction briefs in October and November of 2005, in preparation for a claim construction hearing scheduled for November 18, 2005. That claim construction hearing was vacated, and shortly thereafter, on January 19, 2006, the Court issued a stay of this action pending reexamination of the '794 patent by the Patent & Trademark Office ("PTO"). The Court determined that the PTO's reexamination of the '794 patent and determination of whether U.S. Patent No. 2,530,560 ("the Young Patent") should have a limiting effect on the '794 patent would be helpful to resolving the issues in this case. After the PTO found that the Young patent did not limit the '794 patent, this Court lifted the stay on July 13, 2007. The parties then agreed on a new claim construction schedule and filed claim construction briefs.

Now before Court is the claim construction of the terms "maintaining said locked configuration by use of a pin" and "wherein said pin extends into said security slot."

**LEGAL STANDARD**

Construction of patent claims is to be made by the trial court as a matter of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc) *aff'd*, 517 U.S. 370 (1996). In determining the proper construction of a claim, the Court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *Id.* at 978 (citing *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)). "The appropriate starting point . . . is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris, Corp.*, 156 F.3d 1182, 1185 (Fed. Cir. 1998).

Accordingly, although claims speak to those skilled in the art, in construing a claim, claim terms are given their ordinary and accustomed meaning unless examination of the specification, prosecution history, and other claims indicates that the inventor intended otherwise. *See Electro Medical Sys., S.A. v. Cooper Life Sci., Inc.*, 34 F.3d 1048, 1053 (Fed. Cir. 1994). Although words in a claim are generally given their ordinary and customary meanings, a patentee is free to act as as his own lexicographer provided that the patentee's special definition is clearly stated in the patent specification or prosecution history. *See Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1563 (Fed. Cir. 1990).

2

The claims must be read in view of the specification. *Markman*, 52 F.3d at 978. Yet while "claims are to be interpreted in light of the specification and with a view to ascertain the invention, it does not follow that limitations from the specification maybe read into the claims." *Sjolund v. Musland*, 847 F.2d 1573, 1581 (Fed. Cir. 1988). Therefore, the specification can supply understanding of unclear terms, but should never trump the clear meaning of the claim terms. *See E.I. du Pont de Nemours & Co. v. Phillips Petrol. Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988). Even "[r]eferences to a preferred embodiment, such as those often present in a specification, are not claim limitations." *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 853, 865 (Fed. Cir. 1988).

Finally, the Court may consider the prosecution history of the patent, if in evidence. The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernable from examination of the claims, the written description, and the prosecution history. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

**DISCUSSION**

Claim 1 of the '794 patent contains both of the claim terms at issue. Claim 1 reads as follows, with the two disputed claim terms in bold:

A locking method for a portable electronic device, comprising the steps of:

--engaging a generally rectangular security slot having dimensions of about 3 mmx7 mm, defined in a wall of the portable electronic device with a movable locking member,

--moving said locking member to a locked position relative to said security slot to configure said locking member in a locked configuration; and

--**maintaining said locked configuration by use of a pin proximate said locking member**

-- **wherein said pin extends into said security slot.**

3

### I.  "maintaining said locked configuration by use of a pin"

Regarding the first term to be construed, plaintiff proposes "keeping the locking member in a locked position relative to the security slot by use of a pin," while defendants propose "preventing the locking member from returning to a position aligned relative to the security slot by use of a pin." The dispute centers around the construction of the term "maintaining" as "keeping" or "preventing."

Defendants also ask the Court to construe the terms "a pin proximate said locking member" and "a movable locking member" as part of the construction of "maintaining said locked configuration by use of a pin." During the prior round of claim construction briefs, however, defendants did not believe it was necessary to construe these terms as part of the "maintaining" step of the claim, and it is not clear to the Court how the meaning of the "maintaining" phrase could have changed in the meantime. In addition, the Court has already held that claim construction would be limited to the phrase "maintaining said locked configuration by use of a pin" due to "defendants' failure to respect the Patent Local Rule deadlines." September 20, 2005 Order at 8-9 n.7. For these reasons, and because the Court does not believe that "pin" or "a movable locking member" need to be construed beyond their plain meanings, the Court will not construe these additional terms.[1]

#### A.  Presumption in favor of the ordinary and customary meaning

In general, courts "indulge a heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). The Federal Circuit has held that dictionary definitions may establish a claim term's ordinary meaning. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001) (using Random House Unabridged Dictionary to ascertain the ordinary meaning of "portion"); *Kegel Co. Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1427 (Fed. Cir. 1997) (using Webster's *Third New International Dictionary* to define "assembly"); *Vitronics Corp.*, 90 F.3d at 1584 n.6 ("Although technical treatises and dictionaries fall within the category of extrinsic evidence . . . [j]udges are free to consult such resources at any time

---

[1] For example, the PTO consistently used the term "locking member" in its reexamination order, indicating that "locking member" has "a reasonably well understood meaning in the art," *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996), and is not a means-plus-function element.

4

in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms.").

Here, the dictionary definition of "maintaining" is "keeping in existing state." *Merriam Webster's Collegiate Dictionary* Tenth Edition (1997) at p. 702. While keeping in existing state may encompass defendants' proposed construction of "preventing" the locking member from returning to a certain position, the definition is by no means synonymous with such a construction. The dictionary definition of "maintaining" thus supports plaintiff's proposed construction of "keeping." Accordingly, the Court adopts plaintiff's construction as the claim term's plain and ordinary meaning and finds a heavy presumption in favor of defining "maintaining" as "keeping" or "keeping in existing state." *See CCS Fitness, Inc.*, 288 F.3d 1359.

### B.     Overcoming the presumption

Courts have recognized at least two ways for an accused infringer of a patent to overcome the heavy presumption in favor of the plain and ordinary meaning of a claim term. First, a claim term may receive a meaning separate from its ordinary meaning if the patentee acted as his own lexicographer and clearly defined the term in the specification or prosecution history. *See, e.g., Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 990 (Fed. Cir. 1999); *Rexnord Corp.*, 274 F.3d at 60. The second route, which defendants rely on in this case, applies where the term "chosen by the patentee so deprives the claim of clarity" as to require recourse to the intrinsic evidence for a definite meaning. *Johnson Worldwide Assocs., Inc.*, 175 F.3d at 990.

Defendants argue that neither the claim term "maintaining" nor plaintiff's proposed construction of "keeping" provides a clear meaning to a person with ordinary skill in the art, because of variations present in the preferred embodiments described in the specification.[2] The Court disagrees, for two reasons. First, there is nothing unclear about the meaning of "maintaining" or about plaintiff's

---

[2]Specifically, defendants rely on Figures 3 to 17 for the proposition that the pins function to prevent a crossmember from rotating back to an aligned position relative to the security slot, on Figures 24 and 27 for the proposition that the pins prevent two engagement arms from returning to an aligned position relative to the security slot, and on all of the figures to show that the pins prevent the locking member from returning to an aligned position relative to the security slot.

5

1 construction of "maintaining" as "keeping the locking member in a locked position." Second, defendants' construction would violate an established canon of claim construction. It is well settled that limitations from patent specifications cannot be read into patent claims. *See Sjolund,* 847 F.2d at 1582 (structural limitations in specification of improved crab trap not allowed to be read into claim to decide obviousness); *E.I. du Pont de Nemours & Co.* 849 F.2d at 1432-3 (copolymers' environmental stress crack resistance and impact strength disclosed in specification not proper for consideration in claim construction); *Laitram Corp.,* 863 F.2d at 864-5 (shape of a key shaft in a claim not limited by an embodiment of a square key shaft in the specification).

Here, even if defendants are correct in drawing from the preferred embodiments in the specification that the pins essentially "prevent" the locking member from returning to a certain position, it is not proper to read this construction into the claim in a limiting fashion. The construction of "preventing" is necessarily more narrow than "maintaining" because such a construction introduces a new element into the claim, i.e., a locking member that would presumably return to a position aligned with the security slot but for the use of a pin. The court therefore rejects defendants' construction to avoid improperly importing claim limitations from the specification.

## II.     "wherein said pin extends into said security slot"

In the earlier round of claim construction briefing that took place in 2005, plaintiff construed the term "extends" to be an intransitive verb, while defendants construed the term as an active verb and having a temporal scope. In the present claim construction, defendants change their position, asserting that the concept of a pin "extend[ing] into said security slot" is "clear on its face and does not require a special construction." Def. Resp. at p. 1. This is indeed the initial position of plaintiff, who has stated that the claim terms are "unambiguous and should not be construed." Pl. Opening Brief at 1 n.2.

Absent a showing to the contrary, the Court finds that the term "extends" is an intransitive verb as it is used in the '794 patent. First, nothing in the claim term "wherein said pin extends into said security slot" suggests that the verb "extends" is active or contains a temporal scope. It is therefore improper to add extraneous limitations to the claim by construing the term in such a way. Second, the embodiments in the specification, including Figures 11, 13A and 13B, show the pin to extend into the

security slot before the locking member is placed into a locked position, thereby supporting the construction that "extends" does not carry with it a temporal meaning. Lastly, plaintiff's construction is supported by the prosecution history of the '794 patent, which shows that the Patent Examiner explicitly required the term "extends into" in claim 73 (which later became claim 1 of the '794 patent) to be limited by physical and spatial restrictions, but omitted any temporal restriction on the placement of the pin. In sum, plaintiff's construction of the claim term "extends" is supported by the claim language and other intrinsic evidence.

## CONCLUSION

For the reasons stated and for good cause shown, the Court hereby adopts the construction set forth above: "maintaining said locked configuration by use of a pin" means "keeping the locking member in a locked position relative to the security slot by use of a pin," and "extends" in the limitation "wherein said pin extends into said security slot" is an intransitive verb. [Docket Nos. 99 and 103]

**IT IS SO ORDERED.**

Dated: December 5, 2007

SUSAN ILLSTON
United States District Judge