IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACCO BRANDS, INC. d/b/a KENSINGTON TECHNOLOGY GROUP,<br><br>          Plaintiff,<br><br>     v.<br><br>PC GUARDIAN ANTI-THEFT PRODUCTS, INC., et al.,<br><br>          Defendants.<br>_____ / | No. C 04-03526 SI<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANTS' MOTION FOR FURTHER BRIEFING OF ISSUES RELATING TO INFRINGEMENT** |

On March 14, 2008, the Court heard oral argument on the parties' cross-motions for summary judgment. Having carefully considered the arguments of counsel and the papers submitted, and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment and DENIES defendants' for summary judgment. The Court also DENIES defendants' motion, filed after argument, requesting further briefing.

**BACKGROUND**

Plaintiff, ACCO Brands, Inc., d/b/a Kensington Technology Group ("Kensington"), is the owner of two patents – U.S. Patent Nos. 6,553,794 ("the '794 patent") and 5,502,989 ("the '989 patent") – both of which cover devices for attaching a lock to a portable computer. These patents are very closely related; both patents derive from the same application, U.S. App. Ser. No. 138,634 (filed October 15, 1993). The '989 patent claims a device, however, while the '794 patent claims a method, albeit in different terms from the '989 patent.

Defendants, PC Guardian Anti-Theft Products, Inc., and Fellowes, Inc. (collectively, "PC Guardian"), are the makers of the Notebook Guardian line of locks for laptop computers. In 2000, Kensington brought suit against PC Guardian, claiming that the Notebook Guardian infringed the '989 patent. Kensington ultimately lost on summary judgment. *See ACCO Brands, Inc. v. Micro Security Devices, Inc.*, No. C 00-2296 SI (N.D. Cal. Jul. 23, 2002), *aff'd* 346 F.3d 1075 (Fed. Cir. 2003).[1] Kensington now claims that PC Guardian's product infringes the '794 patent.

The operation of the accused product is not disputed. The product consists of a cable attached to a lock. At the end of the lock is a rectangular metal protrusion, referred to as a "flanged tab structure," as well as a metal "hook arm." In the unlocked position, this hook arm sits inside the protrusion. When the key is turned, however, a cam inside the lock rotates, causing the hook arm to raise out of the protrusion. The hook arm, in its raised position, coupled with the rest of the protrusion, is larger than the security slot on the side of a laptop. Thus, when the protrusion is inserted into a security slot on the side of a computer and the lock is turned, the raised hook arm catches the inside of the security slot, preventing its release.

Plaintiff claims that the accused device infringes claims 1, 4, 5, 7, and 9 of the '794 patent. These claims read as follows:

---

[1] The claim at issue in the previous litigation was claim 10 of the '989 patent, which reads as follows:

10. A locking system, comprising:

    a portable electronic device including an exterior wall defining a security slot;
    cable means for attaching to a first object other than to the portable electronic device;
    a housing, proximate to said electronic device and including a slot engagement member having a slot engaging portion provided with a locking member having a peripheral profile complementary to preselected dimensions of said security slot to thereby permit said locking member to extend into said slot, said slot engagement member being rotatable between an unlocked position wherein said locking member is removable from the slot, and a locked position wherein said locking member is retained within the slot;
    a pin, coupled through said housing, for extending into said security slot proximate said slot engaging portion when said slot engagement member is in said locked position to thereby inhibit rotation of said slot engagement member to said unlocked position; and
    means, coupled to said housing, for attaching said cable to said housing.

*See ACCO Brands, Inc. v. Micro Security Devices*, 346 F.3d 1075, 1076-77 (Fed. Cir. 2003).

2

1. A locking method for a portable electronic device, comprising the steps of:

    engaging a generally rectangular security slot, having dimensions of about 3 mm x 7 mm, defined in a wall of the portable electronic device with a moveable locking member;
    moving said locking member to a locked position relative to said security slot to configure said locking member in a locked configuration; and
    maintaining said locked configuration by use of a pin proximate said locking member; wherein said pin extends into said security slot.

4. The locking method of claim 1 wherein said locking member is coupled to a housing and further comprising the step of localizing said housing to an object other than to the portable electronic device.

5. The locking method of claim 4 wherein said localizing step includes the step of associating a cable, coupled to said housing, to said object.

7. The locking method of claim 1 wherein a lock secures said locking member into said locking position.

9. The locking method of claim 7 wherein said lock is a keyed tumbler lock.

The parties agree that the only dispute at this point in the litigation is whether the accused products "maintain[] said locked configuration by use of a pin" and whether "said pin extends into said security slot." Both parties now move for summary judgment on the question of infringement.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 states that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("summary judgment may be granted when no reasonable jury could return a verdict for the nonmoving party") (internal quotation marks omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. *Id.* The moving party need only point out to the Court that there is an absence of evidence to support the non-moving

party's case. *Id.* at 325..

The burden then shifts to the non-moving party to "designate 'specific facts showing there is a genuine issue for trial.'" *Id.* at 324 (quoting Rule 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).

Summary judgment can be used to determine infringement. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). The moving party bears the burden of proving infringement by a preponderance of the evidence. *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed Cir. 1986). To establish infringement, every limitation in a claim as construed by the Court must be in the accused product, either exactly or by substantial equivalent. *Carroll Touch, Inc., v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). A claim is literally infringed if the accused product is exactly the same as each element of the asserted claim. *Hi-Life Prods., Inc. v. Am. Nat'l Water-Mattress Corp.*, 842 F.2d 323, 325 (Fed. Cir. 1986). Even if a product does not literally infringe it may infringe under the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S. Ct. 1040, 1045 (1997). Doctrine of equivalents infringement is found where the accused product does not literally correspond to the asserted claim but does function in the same way and obtain the same result as the asserted claim. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S. Ct. 854, 856 (1950).

**DISCUSSION**

"Patent infringement is a two step inquiry. First, the court must construe the asserted claim. . . . Second, the court must determine whether the accused product or process contains each limitation of the properly construed claims, either literally or by a substantial equivalent." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005) (internal citation omitted). While the first step is a question of law, the second is a question of fact. *Id.*

4

After denying plaintiff's first motion for summary judgment without prejudice, and after staying this litigation pending reexamination of the '794 patent by the Patent & Trademark Office, the Court held a claim construction hearing to construe the meaning of the phrases "maintaining said locked configuration by use of a pin" and "wherein said pin extends into said security slot." The Court determined that the plain meaning of the former phrase is "keeping the locking member in a locked position relative to the security slot by use of a pin." As to the latter phrase, the Court construed the term "extends" as an intransitive verb that means simply that the pin must be located inside the security slot. Having construed the terms that gave the Court pause when considering plaintiff's first motion for summary judgment, the Court now finds that partial summary judgment for plaintiff is appropriate but that summary judgment on all claims is not, due to disputed issues of material fact.

Defendants ask the Court to find that the accused products do not infringe the '794 patent, and plaintiff asks the Court to find that the accused products literally infringe the '794 patent and that defendants actively induced infringement. These motions raise three distinct issues on which the Court could grant summary adjudication. The first is whether the flanged tab of the accused products maintains the locked configuration, i.e. whether it keeps the locking member in a locked position relative to the security slot. The second is whether the flanged tab is a "pin" or is instead part of the "locking member." The third issue is whether plaintiff has met its burden of showing that defendants have induced infringement. The Court will address each issue in turn.

**1.    Whether the flanged tab maintains the locked configuration**

As to whether the flanged tab of defendants' products maintains the locked configuration of the device, the Court finds that summary judgment for plaintiff is appropriate. During the claim construction hearing, the Court construed the phrase "maintaining said locked configuration by use of a pin" as "keeping the locking member in a locked position relative to the security slot by use of a pin." Leaving aside the question whether the flanged tab of the accused products is the pin described in this claim, this construction leaves no doubt that the flanged tab maintains the locked configuration consistent with the '794 patent. Indeed, there is no dispute between the parties that the flanged tab keeps the hook arm in a locked position relative to the security slot because without the flanged tab, the hook

5

arm – and hence the entire device – would simply fall out of the security slot even if the hook arm were in its locked position and engaged with the security slot wall. *See*, *e.g.*, Defendants' Motion for Summary Judgment at 16, lns 5-6; Defendants' Reply at 6, lns. 24-25; Smith Decl. ex. C at ¶¶ 4, 8; Smith Decl. ex. D at 64, lns. 6-9.

Defendants raise a number of arguments as to why, in the accused products, the flanged tab does not maintain the locked configuration. Unfortunately, most of these arguments tend to obfuscate the analysis by calling like parts by different names and ignoring either the language of the patent claims or the language of this Court's construction of those claims.[2] The only factual dispute presented by defendants, in essence, concerns whether the cam, not the flanged tab, keeps the locking member in a locked position relative to the security slot because it is the cam, not the flanged tab, that causes the hook arm to move. The parties agree that the cam cannot be considered a pin and that it does not extend into the security slot, as required by the '794 patent. Thus, it is undisputed that the cam is not a "pin."

Defendants first rely on the Federal Circuit's decision in *ACCO Brands*, which addressed infringement of the '989 patent, to support their argument that the flanged tab does not maintain the locked configuration in the accused products. After construing the phrase "a pin . . . to . . . inhibit rotation of [the] slot engagement member to [the] unlocked position," the Federal Circuit ruled that "the extension of the flanged tab into the slot has no effect on the pivoting or rotation of the hook arm to its locked position; instead, in the PC Guardian devices it is the cam, not the flanged tab structure, that inhibits movement of the hook arm." *Acco Brands*, 346 F.3d at 1081. The Federal Circuit also noted that in the accused products, the flanged tab "does not in fact prevent rotation to the unlocked position; the unlocked position is achieved solely by extending or retracting the hook arm." *Id.* Defendants rely on this language to argue that their products cannot infringe the '794 patent because it is the cam, not

---

[2]At oral argument, defense counsel charged that plaintiff's counsel had erroneously "called the engagement arms legs." Both parties have used enough obfuscatory language in these motions to bring to mind a story often told about Abraham Lincoln. Mr. Lincoln is said to have asked a young boy how many legs a sheep has, to which the boy answered "four." Mr. Lincoln then asked the boy to consider how many legs a sheep would have if he called the sheep's tail a leg. The boy responded that in that case, a sheep would have five legs. Mr. Lincoln corrected him, however, explaining that calling a sheep's tail a leg does not make it so. *See Jeannette Rankin Brigade v. Chief of the Capitol Police*, 421 F.2d 1090, 1100 (D.C. Cir. 1969) ("The mere assertion that this is a continuing controversy, of course, no more makes it one than, as Abraham Lincoln observed calling a sheep's tail a leg gives that wooly animal five legs.").

6

the flanged tab, that inhibits the movement of the hook arm or locking member.  That is, if, as the Federal Circuit has already determined, the cam is what inhibits the movement of the hook arm, the flanged tab could not be responsible for "maintaining said locked configuration," as the '794 patent claims.

This Court has already noted that "the claims of the '794 patent use different language than the claims of the '989 patent." September 20, 2005 Order at 7-8.  Indeed, the language upon which the Federal Circuit relied is different from the claims of the '794 patent in one crucial respect.  As the Federal Circuit noted, the '989 patent makes clear that the purpose of the pin is to "inhibit rotation of" the locking member "to said unlocked position."  The '794 patent, on the other hand, states that the purpose of the pin is to "maintain[] said locked configuration," which this Court has interpreted as "keeping the locking member in a locked position *relative to the security slot*."  The '794 patent says nothing about the *rotation* of the locking member because it is concerned with the broader goal of using the pin to keep the entire device locked, i.e. in a locked configuration, whereas the language of the '989 patent is concerned with the lesser included goal of preventing the locking member itself from moving to its unlocked position.  In other words, it was relevant to the Federal Circuit and to the infringement of the '989 patent that in the accused products the flanged tab does not prevent the hook arm from moving up and down relative to the flanged tab, because such movement would be movement to the hook arm's unlocked position.  In the context of the '794 patent, however, it is not the ability of the flanged tab to prevent this movement of the hook arm relative to the device that is relevant, but the ability of the flanged tab to keep the *entire device* locked inside the security slot – to keep the hook arm in a locked position relative to the security slot so that the entire device does not fall out of the security slot and utterly defeat the product's sole purpose.  As the Federal Circuit noted in connection with the '989 patent, in the accused products it is the cam, not the flanged tab, that moves the hook arm up and down, into and out of its "locked position."  However, this movement is only one element of the broader "locked configuration" with which the '794 patent is concerned.  The decision of the Federal Circuit, though illustrative of how the accused products operate, has no application in the context of the '794 patent, in which the pin plays a very different role – a role that should not be confused with the role of the cam in the accused products or the role of the spindle in the preferred embodiment of the '794

1 patent.

2 Defendants also argue that the accused products cannot infringe the '794 patent because they
3 "contain no structure that both enters the security slot *and* keeps the locking member in a locked
4 position." Defendants' Motion for Summary Judgment at 12. To the extent this contention addresses
5 whether the flanged tab is a pin, the Court discusses this issue below. To the extent it addresses whether
6 the flanged tab maintains the locked configuration, defendants' argument is wrong as a matter of law.
7 Defendants focus on the embodiment of the '794 patent in Figure 27, but the preferred embodiment,
8 shown in Figures 3 through 9 of the '794 patent, is more pertinent because it involves only one
9 moveable locking member, not two. Despite defendants' efforts to suggest otherwise, it is undisputed
10 that the flanged tab of the accused products does not in fact move. Smith Decl. ex. C at ¶ 4. It is also
11 undisputed that the flanged tab enters the security slot. This leaves defendants' contention that the
12 flanged tab does not keep the locking member in a locked position. Defendants, however, misconstrue
13 the issue to the extent they argue that the '794 patent requires the pin to "keep the locking member in
14 a locked position." As explained in detail above, that requirement may be found in the '989 patent, but
15 the '794 patent, by contrast, requires the pin to "maintain the locked configuration." The Court has
16 already construed this requirement as "keeping the locking member in a locked position *relative to the*
17 *security slot*," meaning that it is of no consequence whether the pin keeps the locking member in a
18 locked position, as long as it keeps the locking member secured in the security slot without slipping out
19 once it is in its locked position.[3]

20 In short, defendants' argument boils down to this: (1) although the flanged tab does serve to keep
21 the entire device locked in the security slot because without it, the hook arm, even though in its locked
22 position, would come loose and the entire device would fall out of the security slot; (2) nevertheless,
23 the flanged tab does not maintain the locked configuration as per the '794 patent because it does not
24 affect the movement of the hook arm itself into and out of its locked position. Defendants' argument,
25 in other words, ignores the Court's prior claim construction and erroneously equates the locked position

---

27 [3]Defendants also argue that plaintiff relies on a hypothetical product to show infringement, rather than on the accused products as they are actually constructed. Plaintiff does no such thing. Instead, plaintiff attempts to illustrate the role of the flanged tab by pointing to what would happen without it.
28 The Court is fully aware that the accused products feature flanged tabs.

of the locking member with the locked configuration of the locking member relative to the security slot. As such, defendants have acknowledged that the flanged tab does indeed prevent the entire device from coming loose and falling out of the security slot by keeping the hook arm engaged with the wall of the security slot and thus in its locked position relative to the security slot. There are thus no disputed issues of material fact for the jury to decide, and plaintiff's motion for summary judgment as to this aspect of defendants' infringement is GRANTED. The Court also DENIES defendants' motion for summary judgment of non-infringement.

**2.     Whether the flanged tab is a pin**

Plaintiff's motion for summary judgment of infringement also depends on the Court's determination of whether the flanged tab of the accused products is a "pin." Defendants assert that the flanged tab is not a pin and not equivalent to a pin because it (1) does not meet the everyday meaning of the word "pin"; (2) is actually a second, albeit stationary, locking member; (3) has a protruding flange, unlike the pins in the embodiments of the '794 patent; and (4) uses the protruding flange to engage with the wall of the security slot, unlike the pin in the '794 patent. Plaintiff asserts that the flanged tab is a pin because, among other reasons, one skilled in the art would understand the flanged tab to fall within the plain meaning of the word "pin."[4] Accordingly, the Court finds that there is a genuine issue of material fact as to whether the flanged tab is exactly the same as the pins in the '794 patent, *Hi-Life Prods.*, 842 F.2d at 325, is similar enough to the pins so as to be equivalent, *Warner-Jenkinson Co.*, 520 U.S. at 21, or is so different that the accused products cannot infringe the '794 patent. The Court therefore DENIES both parties' motions for summary judgment as to this aspect of defendants' infringement.

---

[4]At oral argument plaintiff also argued, for the first time, that defendants are collaterally estopped from arguing that the flanged tab is not a pin because the Federal Circuit already decided, in litigation between these same parties on the '989 patent, that the flanged tab is a pin. Putting aside the fact that plaintiff raised this argument at the eleventh hour, the question whether the flanged tab is a pin was not before the Federal Circuit, which merely assumed, without any evidence of a decision-making process, that the flanged tab is a pin. *See Acco Brands*, 346 F.3d at 1081 ("The hook arm . . . rotates out from a recess in the flanged tab structure (the pin) into locked position.").

9

### 3.     **Whether defendants induced infringement of the '794 patent**

Finally, plaintiff's motion for summary judgment of infringement by defendants depends on whether defendants are liable for infringement. The parties agree that defendants are not directly liable for infringement, and that instead the question is whether defendants are liable under § 271(b) of the Patent Act, which provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). In order to prevail on a claim of active inducement, the patent holder must establish "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Acco Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (internal quotation marks omitted). In order to prove direct infringement, the patent holder "must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *Id.* at 1313. A showing that the accused device necessarily infringes requires a showing that the device can be used only in an infringing manner. *Id.*

As discussed above, the Court denies plaintiff's motion for summary judgment of infringement. It follows that plaintiff has not yet proven direct infringement of the '794 patent. In addition, the Court does not find that the issue of active inducement has been sufficiently briefed by the parties, and that even if infringement had been proven as a matter of law, factual questions remain regarding the two steps outlined in *ABA Locks* because plaintiff has not yet met its burden. Accordingly, the Court DENIES plaintiff's motion for summary judgment as to inducement.

### **CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion for summary judgment [Docket No. 114] and GRANTS IN PART and DENIES IN PART plaintiff's cross-motion for summary judgment [Docket No. 121]. The Court also DENIES defendants'

post-argument Motion for Further Briefing of Issues Relating to Infringement [Docket No. 134].

**IT IS SO ORDERED.**

Dated: March 19, 2008

SUSAN ILLSTON
United States District Judge