John M. McCormack (State Bar No. 143194)
Elizabeth A. Tedesco (State Bar No. 221162)
KOLISCH HARTWELL, P.C.
260 Sheridan Avenue, Suite 200
Palo Alto, California 94306
Telephone: (650) 325-8673
Facsimile: (650) 325-5076

Attorneys for Defendants
PC Guardian Anti-Theft Products, Inc. and Fellowes, Inc.


IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| ACCO BRANDS, INC. d/b/a/ KENSINGTON TECHNOLOGY GROUP, Plaintiff, v. PC GUARDIAN ANTI-THEFT PRODUCTS, INC. and FELLOWES, INC., Defendants. | Case No. 04-03526 SI **PC GUARDIAN'S FIRST AMENDED DISCLOSURE OF PRELIMINARY INVALIDITY CONTENTIONS** Hon. Susan Illston |

Pursuant to Local Patent Rule 3-3, Defendant PC Guardian Anti-Theft Products, Inc. ("PC Guardian") hereby submits its first amended disclosure of preliminary invalidity contentions for U.S. Patent No. 6,553,794 (the '794 patent). PC Guardian reserves the right to supplement and amend these disclosures based on additional information obtained through discovery or other means, or as appropriate in response to the Court's legal determination of issues, including, without limitation, the construction of claims.

## I. Disclosures Under Patent L.R. 3-3(a)

ACCO Brands, Inc. d/b/a Kensington Technology Group ("Kensington") has asserted claims 1, 4, 5, 7 and 9 of the '794 patent against one or more PC Guardian products. PC Guardian contends that the following items of prior art anticipate or render obvious the claims of the '794 patent:

## A. Prior art patents

| Patent Number | Country of Origin | Date of Issue/Publication |
|---|---|---|
| 1.  US 505,299 | United States | September 19, 1893 |
| 2.  US 1,468,955 | United States | September 25, 1923 |
| 3.  US 2,102,583 | United States | December 21, 1937 |
| 4.  US 2,172,208 | United States | September 5, 1939 |
| 5.  US 2,530,560 | United States | November 21, 1950 |
| 6.  US 2,677,261 | United States | May 4, 1954 |
| 7.  US 3,785,183 | United States | January 15, 1974 |
| 8.  US 4,640,106 | United States | February 3, 1987 |
| 9.  US 4,655,057 | United States | April 7, 1987 |

| 10. US 4,738,428 | United States | April 19, 1988 |
| 11. US 4,959,979 | United States | October 2, 1990 |
| 12. US 5,082,232 | United States | January 21, 1992 |
| 13. GB 2 234 856 | United Kingdom | February 13, 1991 |
| 14. DE 38 24 393 | Germany | July 27, 1989 |

**B.    Prior art under 102(b) on-sale bar**

1.  The Macintosh Portable computer, offered for sale at least as early as 1990 by Apple Inc. (formerly Apple Computer, Inc.).

2.  The Macintosh 512K computer, offered for sale at least as early as 1988 by Apple Inc. (formerly Apple Computer, Inc.).

3.  The Macintosh SE computer, offered for sale at least as early as 1988 by Apple Inc. (formerly Apple Computer, Inc.).

4.  The Security Loop sold with the Kensington Apple Security System, offered for sale at least as early as 1988 by Kensington Microware Ltd.

5.  Security Brackets sold with the Kensington Apple Security System, offered for sale at least as early as 1988 by Kensington Microware Ltd.

**C.    Prior art under 35 U.S.C. § 102(f) and/or 102(g)**

The subject matter disclaimed under 37 CFR 1.605(a) during prosecution of U.S. Patent No. 5,381,685 (the Carl '685 patent) is prior art to the '794 patent under 35 U.S.C. § 102(f) and/or 102(g). The disclaimed subject matter is attached hereto as Appendix A.

Stewart Carl and Arthur Zarnowitz filed U.S. Patent Application No. 07/824,964 (the Carl '964 application) on January 24, 1992. Gary Myers filed U.S. Patent Application No. 07/891,783 (the Myers '783 application) on June 1, 1992. The Myers '783 application disclosed an identical locking device to one shown in the Carl '964 application. Examiner Darnell Boucher of the U.S.

Patent and Trademark Office suggested to the applicants of the Carl '964 and Myers '783 applications that they copy a claim into the respective applications for the purposes of provoking an interference.  Myers copied the claim into the Myers '783 application, but Carl and Zarnowitz did not copy the suggested claim into the Carl '964 application.  Carl and Zarnowitz thereby disclaimed under 37 CFR 1.605(a) the subject matter of the suggested claim, thus admitting that the subject matter was derived from another inventive entity.

After Carl and Zarnowitz disclaimed the subject matter of the suggested claim, examiner Boucher rejected subject matter claimed in the Carl '964 application as anticipated and obvious over the disclaimed subject matter.  Carl and Zarnowitz thereafter filed U.S. Patent Application No. 08/042,851 (the Carl '851 application) as a continuation of the Carl '964 application, added Myers as an inventor, and abandoned the Carl '964 application.  Likewise, Myers filed U.S. Patent Application No. 08/119,314 (the Myers '314 application) as a continuation of the Myers '783 application, added Carl and Zarnowitz as inventors, and abandoned the Myers '783 application. The Carl '851 and Myers '314 applications thus each named the same inventive entity (*i.e.* Carl, Zarnowitz and Myers), such that neither of these applications could be prior art to the other under 102(g).  Consequently, examiner Boucher stopped applying the subject matter disclaimed by Carl and Zarnowitz as prior art that anticipated or rendered obvious the subject matter of claims first presented in the Carl '964 application.

The Myers '314 application issued as U.S. Patent No. 5,327,752 (the Myers '752 patent). The subject matter of claim 7 of the Myers '752 patent is substantially identical to the subject matter of the claim suggested by examiner Boucher for the purposes of provoking an interference during prosecution of the Myers '783 application.  The subject matter of claim 7 of the Myers '752 patent is therefore owned by an inventive entity that must include Gary Myers.

The Carl '851 application issued as the Carl '685 patent.  The Carl '685 patent claims priority to the Carl '964 application, during which Carl and Zarnowitz disclaimed the subject matter of the claim suggested by examiner Boucher.  The subject matter suggested by examiner Boucher (*i.e.* claim 7 of the '752 patent) thus was disclaimed during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers.  This disclaimed subject matter therefore is prior art under 102(f) and/or 102(g) to any patent or patent application stemming from the Carl '685 patent that does not include Gary Myers as an inventor.

The '794 patent issued from a continuation-in-part application stemming from the Carl '685 patent.  The '794 patent does not name Gary Myers as an inventor.  Therefore, the subject matter disclaimed during prosecution of the Carl '685 patent is prior art under § 102(f) and/or 102(g) to the '794 patent.

## II.   <u>Disclosures Under Patent L.R. 3-3(b)</u>

Pursuant to Patent L.R. 3-3(b), PC Guardian alleges that the subject matter disclaimed under 37 CFR 1.605(a) during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers (*see* Appendix A) anticipates claims 1, 4, 5, 7 and 9 of the '794 patent. PC Guardian further alleges that various combinations of the prior art items listed in Section I render the claims of the '794 patent obvious, as indicated in the table below.  For all of these combinations, design incentives and other market forces in the same or different fields of endeavor would have motivated one of ordinary skill in the art to make the proposed combinations, which do no more than yield predictable results.  *See KSR v. Teleflex*, 2007 U.S. Lexis 4745 (2007).

| '794 Claim Number(s) | Prior Art Combination |
|---|---|
| 1, 4, 5, 7 and 9 | The subject matter disclaimed under 37 CFR 1.605(a) during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers (*see* Appendix A) in combination with any of the Macintosh Portable, Macintosh SE, and/or Macintosh 512K computers. |
| 1, 4, 5, 7 and 9 | The Macintosh Portable computer and Kensington Apple Security System in combination with any of the following: US 505,299; US 1,468,955; US 2,102,583; US 2,172,208; US 2,530,560; US 2,677,261; US 3,785,183; US 4,640,106; US 4,655,057; US 4,738,428; US 4,959,979; US 5,082,232; DE 38 24 393; and/or GB 2 234 856. |
| 1, 4, 5, 7 and 9 | The Macintosh SE computer and Kensington Apple Security System in combination with any of the following: US 505,299; US 1,468,955; US 2,102,583; US 2,172,208; US 2,530,560; US 2,677,261; US 3,785,183; US 4,640,106; US 4,655,057; US 4,738,428; US 4,959,979; US 5,082,232; DE 38 24 393; and/or GB 2 234 856. |
| 1, 4, 5, 7 and 9 | The Macintosh 512K computer and Kensington Apple Security System in combination with any of the following: US 505,299; US 1,468,955; US 2,102,583; US 2,172,208; US 2,530,560; US 2,677,261; US 3,785,183; US 4,640,106; US 4,655,057; US 4,738,428; US 4,959,979; US 5,082,232; DE 38 24 393; and/or GB 2 234 856. |

## III.    Disclosures Under Patent L.R. 3-3(c)

Pursuant to L.R. 3-3(c), the following chart sets forth the elements of the claims of the '794 patent, and identifies where in each item of prior art each element of the various claims is found.

| Claim of the '794 patent | Location in prior art |
|---|---|
| **1.** A locking method for a portable electronic device, comprising the steps of: | The subject matter disclaimed under 37 CFR 1.605(a) during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers, recites "[a]n apparatus for inhibiting theft of equipment." [*See* Appendix A]. The Macintosh Portable, 512K and SE computers all include security slots of different dimensions.  Various attachment |

mechanisms sold with the Kensington Apple Security System are secured to the security slots of the Macintosh Portable, 512K and SE computers as follows:

- A Security Loop sold with the Kensington Apple Security System secures to the about 3mm x 7mm rectangular security slot of the Macintosh Portable computer;

- A "large" Security Bracket sold with the Kensington Apple Security System secures to the about 6mm x 35mm rectangular security slot of the Macintosh 512K computer; and

- A "small" Security Bracket sold with the Kensington Apple Security System secures to the about 6mm x 22mm security slot of the Macintosh SE computer.

Each of the attachment mechanisms that secure to the security slots of the Macintosh Portable, 512K and SE computers include a portion for housing a cable. The cable is then attached to an immovable object to prevent theft of the computer. Using the Kensington Apple Security Kit with any of the Macintosh Portable, 512K and SE computers provides a method for locking a portable electronic device.

US 2,677,261: Discloses a method of locking a portable electronic device (a refrigerator door). (See col. 1, lines 5-15).

US 3,785,183: Discloses a method of locking portable electronic devices. (See col. 1, lines 15-24).

US 4,640,106: Discloses a method of locking a portable electronic device. (See col. 1, lines 5-15).

US 4,655,057: Discloses a method of deterring theft of a portable electronic device. (See col. 1, lines 30-39).

US 4,738,428: Discloses a method of locking a portable electronic device. (See Abstract).

US 4,959,979: Discloses a method of locking a portable electronic device. (See Abstract).

US 5,082,232: Discloses a method of locking a portable electronic device. (See Title and Abstract).

GB 2 234 856: Discloses a method of preventing theft of a portable electronic device. (See Abstract).

DE 38 24 393: Discloses a method of locking a portable device. (See Figs. 1-3).

engaging a generally | The subject matter disclaimed under 37 CFR 1.605(a) during

| | |
|---|---|
| rectangular security slot, having dimensions of about 3 mm x 7 mm, defined in a wall of the portable electronic device with a moveable locking member; | prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers, recites "[a]n apparatus for inhibiting theft of equipment having an external wall with a rectangular slot with preselected dimensions" that includes "a crossmember" that is "insertable into the slot."   [*See* Appendix A].

The Macintosh Portable computer is a portable electronic device having an about 3mm x 7mm rectangular security slot defined in a wall of the computer.  The Security Loop of the Kensington Apple Security Kit includes a moveable locking portion that engages this security slot.

The Macintosh 512K computer is a portable electronic device having an about 6mm x 35mm rectangular security slot defined in a wall of the computer.  The "large" Security Bracket sold with the Kensington Apple Security System includes a moveable locking portion that engages this security slot.

The Macintosh SE computer is a portable electronic device having an about 6mm x 22mm rectangular security slot defined in a wall of the computer.  The "small" Security Bracket sold with the Kensington Apple Security System includes a moveable locking portion that engages this security slot.

US 505,299: A moveable locking member D engages a generally rectangular slot. (*See* Fig. 1).

US 1,468,955: A moveable locking member 12 engages a generally rectangular slot. (*See* Fig. 1).

US 2,102,583: A moveable locking member 19 engages a generally rectangular slot. (*See* Fig. 2).

US 2,172,208: A moveable locking member 25 engages a rectangular slot 19. (*See* Figs. 3 and 4).

US 2,530,560: A moveable locking member 60 engages a slot 12. (*See* Fig. 1).

US 2,677,261: A moveable locking member 24 engages a generally rectangular slot 21, 22 defined in a wall of a portable electronic device. (*See* Figs. 4 and 5, and col. 1, lines 5-15).

US 3,785,183: A moveable locking member 36 engages a generally rectangular slot 31, 32 defined in a wall of a portable electronic device. (*See* Figs. 4 and 5, and Abstract).

US 4,640,106: A moveable locking member 28 engages a rectangular slot 14 defined in a wall of a portable electronic device. (*See* Figs. 1, 2 and 4, and Abstract).

US 4,655,057: A moveable locking member 54 engages a |

| | |
|---|---|
| | rectangular slot 22 defined in a wall of a portable electronic device 20. (*See* Figs. 1, 3 and 5).<br><br>US 4,738,428: A moveable locking member 26 engages a rectangular slot 36 defined in a wall of a portable electronic device M. (*See* Fig. 3).<br><br>US 4,959,979: A moveable locking member 40 engages a rectangular slot (cassette receiving opening) defined in a wall of a portable electronic device 6. (*See* Fig. 2 and Abstract).<br><br>US 5,082,232: A moveable locking member 20 engages a hole/slot defined in a wall of a portable electronic device 14. (*See* Fig. 2).<br><br>GB 2 234 856: A moveable locking member 48 engages a rectangular slot 52 in a wall of a portable electronic device.  (*See* Figs. 1-4 and Abstract).<br><br>DE 38 24 393: A moveable locking member 5/6 engages a rectangular slot in a wall of a portable device.  (*See* Figs. 1-3). |

| moving said locking member to a locked position relative to said security slot to configure said locking member in a locked configuration; and | The subject matter disclaimed under 37 CFR 1.605(a) during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers, recites that the crossmember "is rotatable 90 degrees by a locking mechanism to misalign the crossmember with the slot." [*See* Appendix A]. |
|---|---|
| | The locking portion of the Security Loop sold with the Kensington Apple Security Kit is moved to a locked position relative to the security slot in the Macintosh Portable computer. |
| | The locking portion of the "large" Security Bracket sold with the Kensington Apple Security System is moved to a locked position relative to the security slot in the Macintosh 512K computer. |
| | The locking portion of the "small" Security Bracket sold with the Kensington Apple Security System is moved to a locked position relative to the security slot in the Macintosh SE computer. |
| | US 505,299: Locking member D is moved to a locked position relative to the slot. (*See* Fig. 1). |
| | US 1,468,955: Locking member 12 is moved to a locked position relative to the slot. (*See* Fig. 1). |
| | US 2,102,583: Locking member 19 is moved to a locked position relative to the slot. (*See* Fig. 5). |
| | US 2,172,208: Locking member 25 is moved to a locked position relative to slot 19. (*See* Fig. 3). |
| | US 2,530,560: Locking member 60 is moved to a locked position relative to slot 12. (*See* Fig. 1). |
| | US 2,677,261: Locking member 24 is moved to a locked position relative to slot 21, 22. (*See* Fig. 4). |
| | US 3,785,183: Locking member 36 is moved to a locked position relative to slot 31, 32. (*See* col. 2, lines 48-55). |
| | US 4,640,106: Locking member 28 is moved to a locked position relative to slot 14. (*See* Fig. 2). |
| | US 4,655,057: Locking member 54 is moved to a locked position relative to slot 22. (*See* Fig. 5). |
| | US 4,738,428: Locking member 26 is moved to a locked position relative to slot 36. (*See* Fig. 3). |
| | US 4,959,979: Locking member 40 is moved to a locked position relative to the slot. (*See* Fig. 2). |
| | US 5,082,232: Locking member is moved to a locked position relative to the hole/slot. (*See* Fig. 2). |
| | GB 2 234 856: Locking member 48 is moved to a locked position relative to slot 52. (*See* Fig. 4). |
| | DE 88 24 539: Locking member 56 is moved to a locked position relative to the slot. (*See* Fig. 2). |

| | |
|---|---|
| maintaining said locked configuration by use of a pin proximate said locking member, wherein said pin extends into said security slot. | The subject matter disclaimed under 37 CFR 1.605(a) during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers, recites "abutment means emanating from the housing and located on opposite sides of the shaft intermediate the housing and the crossmember." The abutment means is "insertable into the slot with the crossmember aligned with the abutment means to a position in which the crossmember is inside the external wall and the abutment means and the shaft occupy the slot, the spindle is rotatable 90 degrees by a locking mechanism to misalign the crossmember with the slot and the abutment means to attach the attachment mechanism rigidly to the external wall." [*See* Appendix A]. The abutment means disclosed in the Carl '685 patent that are "insertable into the slot with the crossmember aligned" are pins 60 and 130. (*See* Figs. 10A and 13A). |
| | The Macintosh 512K computer includes metal pins that extend into the security slot, and engage the locking portion of the "large" Security Bracket sold with the Kensington Apple Security System after it has been moved to the locked position, thereby maintaining the locking portion in the locked position. |
| | The Macintosh SE computer also includes metal pins that extend into the security slot, and engage the locking portion of the "small" Security Bracket sold with the Kensington Apple Security System after it has been moved to the locked position, thereby maintaining the locking portion in the locked position. |
| | US 505,299: Either locking member D is a two-part locking member, or one of the two members D is a locking member and the other is a pin that extends into the slot and maintains the locked configuration. (*See* Figs. 1 and 2). |
| | US 1,468,955: Either locking member 12 is part of a two part locking member that further includes "cylindrical stem 26," or cylindrical stem 26 is a pin that extends into the slot and maintains the locked configuration. (*See* Fig. 1). |
| | US 2,102,583: Pin 20 extends into the slot and maintains the locked configuration. (*See* Fig. 5). |
| | US 2,172,208: If pin 26 extends into slot 19 when locking member 25 is misaligned with slot 19, then pin 26 maintains the locked configuration. (*See* Fig. 3). |
| | US 2,530,560: Pin 32 extends into the slot and maintains the locked configuration. (*See* Fig. 1). |
| | US 2,677,261: Pin 25 extends into slot 21, 22 and maintains the |

| | |
|---|---|
| | locked configuration. (*See* Fig. 4). |
| | US 3,785,183: Pin 43 extends into slot 31, 32 and maintains the locked configuration (*i.e.* by preventing the locking member 36 from rotating past the misaligned position shown in Fig. 4 to an aligned position). (*See* Fig. 4). |
| | US 4,640,106: Pin 24 extends into slot 14 and maintains the locked configuration. (*See* Fig. 2). |
| | US 4,655,057: Pins 38 extend into slot 22 and maintain the locked configuration. (*See* Fig. 5). |
| | US 4,738,428: Either locking member 26 is part of a two part locking member that further includes "hook means 27," or hook means 27 is a pin that extends into the slot and maintains the locked configuration. (*See* Fig. 3). |
| | US 4,959,979: Pin 36 extends into the slot and maintains the locked configuration. (*See* Fig. 2). |
| | GB 2 234 856: Pins 26 extend into slot 52 and maintain the locked configuration. (*See* Fig. 4). |
| | DE 38 24 393: Pin 4 extends into the slot and maintains the locked configuration. (*See* Fig. 2). |
| **4.** The locking method of claim 1 wherein said locking member is coupled to a housing and further comprising the step of localizing said housing to an object other than to the portable electronic device. | The subject matter disclaimed under 37 CFR 1.605(a) during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers, recites "a housing" coupled to the crossmember and "a cable connected to an immovable object and secured to the housing to inhibit theft of the equipment." [*See* Appendix A].<br><br>Each of the attachment mechanisms that secure to the security slots of the Macintosh Portable, 512K and SE computers include a portion for housing a cable. The cable is then attached to an immovable object to prevent theft of the computer.<br><br>US 505,299: Locking member D is coupled to a housing A. (*See* Fig. 2).<br><br>US 1,468,955: Locking member 12 is coupled to a housing 7. (*See* Fig. 1).<br><br>US 2,102,583: Locking member 19 is coupled to a housing 15. (*See* Fig. 2).<br><br>US 2,172,208: Locking member 25 is coupled to a housing 15. (*See* Figs. 2 and 4).<br><br>US 2,677,261: Locking member 24 is coupled to a housing 26. |

| | |
|---|---|
| | (*See* Figs. 4 and 5). |
| | US 3,785,183: Locking member 36 is coupled to a housing 19 that is localized to an abject other than the portable electronic device by a cable 11. (*See* Fig. 1 and col. 1, lines 7-10). |
| | US 4,640,106: Locking member 28 is coupled to a housing 25. (*See* Fig. 1). |
| | US 4,655,057: Locking member 54 is coupled to a housing 34. (*See* Fig. 1). |
| | US 4,738,428: Locking member 26 is coupled to a housing 28 that is localized to an immovable object by a cable 40. (*See* Fig. 3 and col. 2, lines 61-64). |
| | US 4,959,979: Locking member 40 is coupled to a housing 8. (*See* Fig. 2). |
| | US 5,082,232: Locking member 20 is coupled to a housing 16/26 that is localized to an immovable object by a cable 12. (*See* Fig. 2). |
| | GB 2 234 856: Locking member 48 is coupled to a housing 10. (*See* Fig. 1). |
| | DE 38 24 393: Locking member 5/6 is coupled to a housing 3 that is localized to an immovable object by a cable 17.  (*See* Figs. 1-2). |
| **5.** The locking method of claim 4 wherein said localizing step includes the step of associating a cable, coupled to said housing, to said object. | See the comments related to claim 4, above. |
| **7.** The locking method of claim 1 wherein a lock secures said locking member into said locking position. | The subject matter disclaimed under 37 CFR 1.605(a) during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers, recites that the crossmember "is rotatable 90 degrees *by a locking mechanism* to misalign the crossmember with the slot and the abutment means." [*See* Appendix A]. |
| | The Macintosh 512K computer includes metal pins that extend into the security slot, and engage the locking portion of the "large" Security Bracket sold with the Kensington Apple Security System after it has been moved to the locked position, thereby securing the locking portion in the locked position. |
| | The Macintosh SE computer also includes metal pins that extend into the security slot, and engage the locking portion of the "small" Security Bracket sold with the Kensington Apple Security System after it has been moved to the locked position, thereby |

| | securing the locking portion in the locked position. |
| | US 505,299: A key actuated lock secures the locking member D in the locked position. (*See* Fig. 2). |
| | US 1,468,955: A key actuated lock secures the locking member 12 in the locked position. (*See* Fig. 1). |
| | US 2,102,583: A locking mechanism 25 secures the locking member 19 in the locked position. (*See* Figs. 2-3). |
| | US 2,172,208: A key actuated tumbler lock secures the locking member 25 in the locked position. (col. 4, lines 17-22). |
| | US 2,677,261: A key actuated tumbler lock secures the locking member 24 in the locked position. (*See* col.2, lines 32-37). |
| | US 3,785,183: A key actuated tumbler lock 18 secures the locking member 36 in the locked position. |
| | US 4,640,106: A key actuated tumbler lock 42 secures the locking member 28 in the locked position. (*See* Fig. 2 and col. 3, lines 26-35). |
| | US 4,655,057: A key actuated tumbler lock50 secures the locking member 54 in the locked position. (*See* Fig. 5). |
| | US 4,738,428: A locking device 28/40 secures the locking member 26 in the locked position. (*See* Fig. 3). |
| | US 4,959,979: A key actuated tumbler lock 26 secures the locking member 44 in the locked position. (*See* Fig. 2). |
| | US 5,082,232: A locking device 16/26/12 secures the locking member 20 in the locked position. (*See* Fig. 2). |
| | DE 38 24 393: A locking device 16/17 secures the locking member 5/6 in the locked position.  (*See* Fig. 2). |
| **9.** The locking method of claim 7 wherein said lock is a keyed tumbler lock. | The subject matter disclaimed under 37 CFR 1.605(a) during prosecution of the Carl '685 patent to an inventive entity that must include Gary Myers, recites that the crossmember "is rotatable 90 degrees *by a locking mechanism* to misalign the crossmember with the slot and the abutment means." [*See* Appendix A].  The specification of the Carl '685 patent discloses two such locking mechanisms, one of which includes a keyed tumbler lock (*See* Figs. 11-13). |
| | US 2,172,208: A key actuated tumbler lock secures the locking member 25 in the locked position. (col. 4, lines 17-22). |
| | US 2,677,261: A key actuated tumbler lock secures the locking |

| | member 24 in the locked position. (*See* col.2, lines 32-37). |
| --- | --- |
| | US 3,785,183: A key actuated tumbler lock 18 secures the locking member 36 in the locked position. |
| | US 4,640,106: A key actuated tumbler lock 42 secures the locking member 28 in the locked position. (*See* Fig. 2 and col. 3, lines 26-35). |
| | US 4,655,057: A key actuated tumbler lock50 secures the locking member 54 in the locked position. (*See* Fig. 5). |
| | US 4,959,979: A key actuated tumbler lock 26 secures the locking member 44 in the locked position. (*See* Fig. 2). |

### III.    Disclosures Under Patent L.R. 3-3(d)

Pursuant to Patent L.R. 3-3(d), PC Guardian contends that claims 1, 4, 5, 7 and 9 of the '794 patent are invalid under 35 U.S.C. §112(2) for the following reasons:

(1) The phrase "a generally rectangular security slot having dimensions of about 3mm x 7mm" (claim 1) contains the term "about," which is a relative term that renders the claim indefinite.  The term "about" is not defined by the claim, the specification does not provide a standard for ascertaining the requisite degree, and one of ordinary skill in the art would not be reasonably apprised of the scope of the alleged invention.

(2) The terms "a moveable locking member," "a locked position," and "a locked configuration" (claim 1) are not sufficiently defined in a claim reciting "a locking method," do not have a defined meaning to one of ordinary skill in the art, and are not used anywhere in the specification.

1   PC Guardian also contends that claims 7 and 9 are invalid under 35 U.S.C. §112(2) because

2   they recite the term "said locking position," and there is insufficient antecedent basis for this

3   limitation in the claim.

4

5

6   DATED: ——————————, 2007

7                                  Respectfully,

8                                  KOLISCH HARTWELL, P.C.

9

10

11                          By: _____

12                                  John M. McCormack
                                    of Attorneys for Defendants
13                                  PC Guardian Anti-Theft Products, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|

08/042,851   04/05/93   CARL

S    14572-28-2

| EXAMINER |
|---|
| BOUCHER, D |

35M1/0615

GEORGE M. SCHWAB
TOWNSEND AND TOWNSEND
ONE MARKET PLAZA
STEUART STREET TOWER, 20TH FLOOR
SAN FRANCISCO, CA 94105

| ART UNIT | PAPER NUMBER |
|---|---|
| 3508 | 9 |

DATE MAILED:

06/15/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined   ☐ Responsive to communication filed on _____   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire____3____ month(s), ____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.   35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.        2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.            4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims _1-42_____ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1-42_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are  ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

Appendix A

Serial No. 08/042851                     -2-
Art Unit   3508

The following claimed invention has been disclaimed by applicant's UNDER THE PROVISIONS OF 37 C.F.R. § 1.605(a) as a result of their FAILURE to copy the claim for purposes of an interference in paper number 3.

An apparatus for inhibiting theft of equipment having an external wall with a rectangular slot with preselected dimensions, the improvement comprising

an attachment mechanism including a housing, a spindle including a first portion rotatably mounted with the housing, a shaft fixed to the first portion and extending outwardly from the housing, and a crossmember at the distal end of the shaft, the crossmember having peripheral dimensions conforming closely to the preselected dimensions of the slot and abutment means emanating from the housing and located on opposite sides of the shaft intermediate the housing and the crossmember, the abutment means and the shaft having cross-sectional dimensions closely conforming to the dimensions of the slot so that the crossmember, the shaft and the abutment means are insertable into the slot with the crossmember aligned with the abutment means to a position in which the crossmember is inside the external wall and the abutment means and the shaft occupy the slot, the spindle is rotatable 90 degrees by a locking mechanism to misalign the crossmember with the slot and the abutment means to attach the attachment mechanism rigidly to the external wall;

Appendix A

Serial No. 08/042851                           -3-
Art Unit    3508

wherein the housing additionally includes a spring for
biasing the housing against the external wall upon attachment of
the attachment means to the equipment, and

a cable connected to an immoveable object and secured to the
housing to inhibit theft of the equipment.

Claims 1, 18 and 39-42 are rejected as being anticipated by
the disclaimed claimed invention under the provisions of 37 CFR
1.605(a).

Claim 2 is rejected as being obvious over the disclaimed
claimed invention under the provisions of 37 CFR 1.605(a).  It
would have been an obvious duplication of part to one of ordinary
skill in the art to provide a plurality of locking mechanisms to
lock in a plurality of slots (In re Harza, 124 USPQ 378).

Claims 4-8, 12-16, 20-21, 23-26, 30-33, and 37-38 are
rejected as being obvious over the disclaimed claimed invention
under the provisions of 37 CFR 1.605(a) and in view of Avaiusini
'984.  Avaiusini '984 teaches a locking device with an attachment
mechanism having a housing 32,70, rotatable shaft 50, crossmember
52, spring 66, pin 90, shell 70, collar with tab portion 72, and
aperture 88.  It would have been an obvious matter of design
choice to one of ordinary skill in the art to construct the
housing, lock mechanism and spindle of the disclaimed claimed
invention in a manner taught by Avaiusini '984 since the housing
structure is well known in the art of locks and provides a
function of housing the locking mechanism and spindle against

Appendix A

Serial No. 08/042851                                    -4-
Art Unit    3508

dust and debris.  It would have been and obvious discovery of

optimum ranges within prior art general conditions (In re Aller

et al., 105 USPQ 233) and obvious change in shape proportion (In

re Dailey et al., 149 USPQ 47) to make the slot dimensions of 7.0

X 3.0 mm and the crossmember dimensions 6.75 X 2.75 mm and to

make the slot with rounded corners having a radii of 1.5 mm (col.

5, lines 14-21).  With regard to claim 38, all materials are

considered to have a limited shear strength including pin 90.

The Examiner takes NOTICE that it would have been obvious to

place a 90 degree groove on the spindle of the modified

disclaimed invention and a pin on the housing to limit the

rotation of the spindle.

      Claims 17 and 22 are rejected as being obvious over the

disclaimed claimed invention under the provisions of 37 CFR

1.605(a) in view of Avaiusini '984 and in further view of Spence

'649.  The modified disclaimed invention fails to teach the cable

dead ending and being permanently fixed to the aperture in the

housing.  Singer et al. '826 teaches it is well known to secure

an end of a cable to a housing of an attachment mechanism 24 to

secure portable articles from theft.  It would have been obvious

matter of design choice to one of ordinary skill in the art to

attach a cable to the modified housing of the disclaimed

invention and Avaiusini '984 in a manner taught by Singer et al.

'826 since permanently affixing the end of the cable to a housing

Serial No. 08/042851                           -5-
Art Unit   3508

is a well known manner of attaching the cable to the housing
without loss of function.

Claims 3, 19, and 34-36 are rejected as being obvious over
the disclaimed claimed invention under the provisions of 37 CFR
1.605(a) in view of Spence '649.  It would have been obvious to
one of ordinary skill in the art to modify the housing of the
disclaimed invention with a housing 30,40 having alignable
apertures 35,48 capable of accepted a shackle of a padlock or a
cable as taught by Spence '649 in order to securely lock the
portable device to a fixed structure with the cable.

Claims 1-41 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.  In claim 1, line 1, "the theft" lacks
antecedent basis.  In claim 1, line 2, "such as" is vague and
indefinite.  It appears that applicant is improperly trying to
claim the slot in the computer in combination with the attachment
mechanism.  In claim 1, line 10, "the internal dimensions" lack
proper antecedent basis.  In claim 1, line 12, "the thickness"
and "the chassis wall" lack antecedent basis.  In claim 1, line
15, "the cross-sectional dimensions" lack proper antecedent
basis.  In claim 2, line 2, there is no antecedent basis for
"said locking mechanisms".  It is suggested to change "locking
mechanisms" to --attachment mechanisms-- in lines 2 and 4.  In
claim 2, line 3, it is suggested to change "items" to --pieces--.

Serial No. 08/042851                              -6-
Art Unit    3508

In claim 15, line 14, "the item" lacks antecedent basis.  It is

suggested to change "the item" to --a piece--.   In claim 16,

lines 4-5, "the aperture" lacks antecedent basis.  In claim 18,

lines 1-2, it is suggested to change "an item" to --a piece--.

In claim 18, line 2, "such as" is vague and indefinite.  In claim

18, lines 11-12, "the internal dimensions" lacks proper

antecedent basis.  In claim 18, lines 13-14, "the thickness" and

"the chassis wall" lack antecedent basis.  In claim 18, line 17,

"the cross-sectional dimensions"  lack proper antecedent basis.

In claim 33, line 4, it is suggested to change "item" to

--piece--.  In claim 34, lines 1-2, it is suggested to change

"items" and "item" to --pieces-- and --piece--, respectively.  In

claim 37, line 2, "such as" is vague and indefinite.  In claim

37, line 27, "the item" lacks antecedent basis and it is

suggested that applicant delete "item of".  In claim 39, line 2,

"such as" is vague and indefinite.

     The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

     A person shall be entitled to a patent unless --
     (b) the invention was patented or described in a printed
     publication in this or a foreign country or in public use or
     on sale in this country, more than one year prior to the
     date of application for patent in the United States.

 Claim 39 is rejected under 35 U.S.C. § 102(b) as being

anticipated by Avaiusini '984.  Avaiusini '984 teaches a method

of locking equipment where a slot 108 is provided in a piece of

equipment for accepting an attachment mechanism having a housing

Serial No. 08/042851                               -7-
Art Unit   3508

32,70, rotatable shaft 50, crossmember 52 and abutment means

(edge of crossmember 52 between the shaft and the crossmember

which engages locking surface 110).

    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.

> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

    Claims 1-2, 4-8, 12-18, 20-26, 30-33, and 37-38, as best

understood by the Examiner, are rejected under 35 U.S.C. § 103 as

being unpatentable over Avaiusini '984 in view of Singer et al.

'826.  Avaiusini '984 teaches all the elements of the claimed

invention as previously described and spring 66, pin 90, shell

70, collar with tab portion 72, and aperture 88.  Avaiusini '984

fails to teach the securing mechanism being a cable.  Singer et

al. '826 teaches it is well known to secure a cable to a housing

of an attachment mechanism 24 to secure portable articles from

theft.  It would have been obvious to one of ordinary skill in

the art to attach a cable to the housing of Avaiusini '984 as

Serial No. 08/042851                                    -8-
Art Unit   3508

taught by Singer et al. '826 as a means of securing the skies to

a stationary structure other than ski rack 12.  It would have

been and obvious discovery of optimum ranges within prior art

general conditions (In re Aller et al., 105 USPQ 233) and obvious

change in shape proportion (In re Dailey et al., 149 USPQ 47) to

make the slot dimensions of 7.0 X 3.0 mm and the crossmember

dimensions 6.75 X 2.75 mm and to make the slot with rounded

corners having a radii of 1.5 mm (col. 5, lines 14-21).  With

regard to claim 38, all materials are considered to have a

limited shear strength including pin 90.  The Examiner takes

NOTICE that it would have been obvious to place a 90 degree

groove on the spindle of Avaiusini '984 and a pin on the housing

to limit the rotation of the spindle.

        Claims 9-11 and 27-29 would be allowable if rewritten to

overcome the rejection under 35 U.S.C. § 112 and to include all

of the limitations of the base claim and any intervening claims.

        Any inquiry concerning this communication or earlier

communications from the examiner should be directed to Darnell

Boucher whose telephone number is (703) 308-2492.

        Any inquiry of a general nature or relating to the status of

this application should be directed to the Group receptionist

whose telephone number is (703) 308-2168.

D.M. Boucher                              PETER M. CUOMO
June 12, 1993                          SUPERVISORY PATENT EXAMINER
                                              GROUP 3500

Appendix A