1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   ACCO BRANDS, INC. d/b/a KENSINGTON            No. C 04-03526 SI
    TECHNOLOGY GROUP,
9                                                 **ORDER DENYING DEFENDANTS'**
              Plaintiff,                          **MOTION FOR SUMMARY JUDGMENT**
10                                                **and GRANTING IN PART AND**
       v.                                         **DENYING IN PART PLAINTIFF'S**
11                                                **MOTION FOR SUMMARY JUDGMENT**
    PC GUARDIAN ANTI-THEFT PRODUCTS,
12  INC. and FELLOWES, INC.

13            Defendants.
    _____/

14

15          On October 22, 2008, the Court heard oral argument on the parties' cross-motions for summary

16  judgment.  Having considered the arguments of counsel and the papers submitted, and for good cause

17  shown, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion and DENIES

18  defendants' motion.

19
                                        **BACKGROUND**
20
            The Court described the facts of this case in its March 19, 2008 Order denying defendants'
21
    motion for summary judgment and granting in part and denying in part plaintiff's motion for summary
22
    judgment ("March 19 Order").  [Docket No. 137]
23
            Plaintiff, ACCO Brands, Inc., d/b/a Kensington Technology Group
24
    ("Kensington"), is the owner of two patents – U.S. Patent Nos. 6,553,794 ("the '794
    patent") and 5,502,989 ("the '989 patent") – both of which cover devices for attaching
25
    a lock to a portable computer.  These patents are very closely related; both patents derive
    from the same application, U.S. App. Ser. No. 138,634 (filed October 15, 1993).  The
26
    '989 patent claims a device, however, while the '794 patent claims a method, albeit in
    different terms from the '989 patent.
27
            Defendants, PC Guardian Anti-Theft Products, Inc., and Fellowes, Inc.
28  (collectively, "PC Guardian"), are the makers of the Notebook Guardian line of locks for
    laptop computers.  In 2000, Kensington brought suit against PC Guardian, claiming that

United States District Court
For the Northern District of California

1

the Notebook Guardian infringed the '989 patent.  Kensington ultimately lost on

2

summary judgment.  *See ACCO Brands, Inc. v. Micro Security Devices, Inc.*, No. C 00-2296 SI (N.D. Cal. Jul. 23, 2002), *aff'd* 346 F.3d 1075 (Fed. Cir. 2003).[1]  Kensington now claims that PC Guardian's product infringes the '794 patent.

3

The operation of the accused product is not disputed.  The product consists of a

4

cable attached to a lock.  At the end of the lock is a rectangular metal protrusion, referred to as a "flanged tab structure," as well as a metal "hook arm."  In the unlocked position,

5

this hook arm sits inside the protrusion.  When the key is turned, however, a cam inside the lock rotates, causing the hook arm to raise out of the protrusion.  The hook arm, in

6

its raised position, coupled with the rest of the protrusion, is larger than the security slot on the side of a laptop.  Thus, when the protrusion is inserted into a security slot on the

7

side of a computer and the lock is turned, the raised hook arm catches the inside of the security slot, preventing its release.

8

Plaintiff claims that the accused device infringes claims 1, 4, 5, 7, and 9 of the '794 patent.  These claims read as follows:

9

    1.      A locking method for a portable electronic device, comprising the steps of:

10

                engaging a generally rectangular security slot, having dimensions of about 3 mm x 7 mm, defined in a wall of the portable electronic device

11

with a moveable locking member;

12

                moving said locking member to a locked position relative to said security slot to configure said locking member in a locked configuration; and

13

                maintaining said locked configuration by use of a pin proximate said locking member;

14

    wherein said pin extends into said security slot.

15

    4.      The locking method of claim 1 wherein said locking member is coupled to a housing and further comprising the step of localizing said housing

16

to an object other than to the portable electronic device.

    5.      The locking method of claim 4 wherein said localizing step includes the

17

18

[1] The claim at issue in the previous litigation was claim 10 of the '989 patent, which reads as follows:

19

10. A locking system, comprising:

20

                a portable electronic device including an exterior wall defining a security slot;

21

                cable means for attaching to a first object other than to the portable electronic device;

22

                a housing, proximate to said electronic device and including a slot engagement member having a slot engaging portion provided with a locking

23

member having a peripheral profile complementary to preselected dimensions of said security slot to thereby permit said locking member to extend into said

24

slot, said slot engagement member being rotatable between an unlocked position wherein said locking member is removable from the slot, and a locked position

25

wherein said locking member is retained within the slot;

                a pin, coupled through said housing, for extending into said security slot

26

proximate said slot engaging portion when said slot engagement member is in said locked position to thereby inhibit rotation of said slot engagement member

27

to said unlocked position; and

                means, coupled to said housing, for attaching said cable to said housing.

28

*See ACCO Brands, Inc. v. Micro Security Devices*, 346 F.3d 1075, 1076-77 (Fed. Cir. 2003).

2

step of associating a cable, coupled to said housing, to said object.

  7.  The locking method of claim 1 wherein a lock secures said locking member into said locking position.

  9.  The locking method of claim 7 wherein said lock is a keyed tumbler lock.

The parties agree that the only dispute at this point in the litigation is whether the accused products "maintain[] said locked configuration by use of a pin" and whether "said pin extends into said security slot."

March 19 Order, at 1-3.

  Both parties moved for summary judgment on the question of infringement, and on March 19, 2008, the Court granted partial summary judgment for plaintiff, holding that the flanged tab of defendants' products "maintains the locked configuration" in plaintiff's '794 patent. The Court denied both parties' motions for the summary judgment on the issue of whether the flanged tab is a pin, holding that this was a disputed issue of material fact. The Court also denied plaintiff's motion for summary judgment that defendants induced infringement. *See* March 19 Order.

  On April 14, 2008, defendants moved for leave to amend their preliminary invalidity contentions to include prior art. Defendants claimed that they had recently discovered "three Apple computers, each having differently sized generally rectangular security slots." The models–the Macintosh Portable, the Macintosh SE, and the Macintosh 512K ("the Macintosh computers")–date from the late 1980's. Defendants maintained that the Macintosh Portable has a security slot measuring "about 3mm x 7mm" while the others "evidence the trend of security slots becoming progressively smaller." Def. Reply at 2. [Docket No. 154]

  The characteristics of the security slots in the newly discovered computers were material, defendants argued, because plaintiff had represented to the Patent & Trademark Office ("PTO") during the prosecution of the '794 patent that the characteristics of the security slot differentiated it from the prior art of record. Decl. of Elizabeth A. Tedesco in Supp. of Defs. Mot. for Summ. J. ("Tedesco Decl."), at ex. P, p. 34 (amendment to application, June 12, 2002). [Docket No. 257]

  In light of the importance of the size and shape of the security slot to the patentability of claims 1-14 of the '794 patent, defendants claimed that the discovery of the Macintosh computers prompted them to seek leave to amend their invalidity contentions. Defendants sought to challenge the validity of the '794 patent by arguing that 14 patents listed on the face of the '794 patent, when combined with the security slots in the Macintosh computers, would "effectively render the claims of the '794 patent

**United States District Court**
For the Northern District of California

1  obvious." Def. Mot. for Leave to Amend Preliminary Invalidity Contentions, at 14. [Docket No. 150]

2  On May 22, 2008, the Court granted defendants leave to amend their preliminary invalidity contentions.

3  [Docket No. 163]

4  Now before the Court are the parties' renewed cross-motions for summary judgment.

6  **SUMMARY JUDGMENT**

7  **1.      Summary judgment**

8  Summary judgment may be granted if "the pleadings, depositions, answers to interrogatories,

9  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

10  material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

11  "Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue

12  as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v.*

13  *Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("summary judgment may be granted

14  when no reasonable jury could return a verdict for the nonmoving party") (internal quotation marks

15  omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of

16  material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). The moving party, however, has

17  no burden to negate or disprove matters on which the non-moving party will have the burden of proof

18  at trial. *Id.* The moving party need only point out to the Court that there is an absence of evidence to

19  support the non-moving party's case. *Id.* at 325.

20  The burden then shifts to the non-moving party to "designate 'specific facts showing there is a

21  genuine issue for trial.'" *Id* . at 324 (quoting Rule 56(e)). To carry this burden, the non-moving party

22  must "do more than simply show that there is some metaphysical doubt as to the material facts."

23  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence

24  of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could

25  reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

27  **2.      Summary judgment of infringement**

28  Summary judgment can be used to determine infringement. *Avia Group Int'l, Inc. v. L.A. Gear*

4

United States District Court
For the Northern District of California

1    *Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir.1988).  The moving party bears the burden of proving

2    infringement by a preponderance of the evidence.  *Mannesmann Demag Corp. v. Engineered Metal*

3    *Prods. Co.*, 793 F.2d 1279, 1282 (Fed. Cir.1986).  To establish infringement, every limitation in a claim

4    as construed by the Court must be in the accused product, either exactly or by substantial equivalent.

5    *Carroll Touch, Inc., v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir.1993).  A claim is literally

6    infringed if the accused product is exactly the same as each element of the asserted claim.  *Hi-Life*

7    *Prods., Inc. v. Am. Nat'l Water-Mattress Corp.*, 842 F.2d 323, 325 (Fed. Cir.1986).

8

9    **3.      Summary judgment of invalidity**

10        A party seeking to invalidate a patent must overcome a presumption that the patent is valid. 35

11   U.S.C. § 282; *United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir.1996).

12   This presumption places the burden on the challenging party to prove the patent's invalidity by clear

13   and convincing evidence.  *United States Gypsum Co.*, 74 F.3d at 1212.

14

15                                  **DISCUSSION**

16   **1.      Invalidity claim by defendant Fellowes**

17        Plaintiff argues that it is entitled to summary judgment on defendant Fellowes' invalidity claim

18   because Fellowes never served invalidity contentions on plaintiff.  Local Patent Rule 3-3 provides: "Not

19   later than 45 days after service upon it of the 'Disclosure of Asserted Claims and Infringement

20   Contentions,' each party opposing a claim of patent infringement, shall serve on all parties its 'Invalidity

21   Contentions'."  Defendant Fellowes concedes that it never served an invalidity contention on plaintiff.

22   Def. Opp. to Pl. Mot. for Summ. J., at 30.  Fellowes argues that it has asserted this claim through its

23   interrogatory responses and deposition testimony.  Fellowes does not cite any legal authority for its

24   contention that raising this claim through discovery constitutes compliance with Local Patent Rule 3-3.

25        Fellowes is barred from raising an invalidity claim at this stage in the proceeding.  Accordingly,

26   the Court GRANTS plaintiff summary judgment against defendant Fellowes as to the validity of the

27   '794 patent.

28

                                         5

**United States District Court**
For the Northern District of California

**2.      Invalidity claim by defendant PC Guardian Anti-Theft Products, Inc.**

Defendant PC Guardian contends that all of plaintiff's claims arising from the '794 patent are invalid under 35 U.S.C. § 103, because their subject matter is obvious, and under 35 U.S.C. § 112, because the claim term "about 3mm x 7 mm" is indefinite. In addition, as an initial matter, plaintiff argues that defendant is estopped from challenging the validity of the '794 patent. Each argument will be addressed below.

**A.      Estoppel**

Plaintiff argues that defendant is estopped by its conduct in the *inter partes* reexamination from challenging the validity of the '794 patent. The Court disagrees.

The patent reexamination statute, 35 U.S.C. §§ 301–307, provides that anyone at any time may request an *inter partes* reexamination, a procedure in which the PTO reexamines a patent in light of a prior art challenge to the validity of the patent. A third party whose request for an *inter partes* reexamination results in an order under 35 U.S.C. § 313 is estopped from asserting at a later time the invalidity of any claim finally determined to be valid and patentable, so long as the third party raised or could have raised the issue during the *inter partes* reexamination proceedings. *See* 35 U.S.C. § 315(c). Plaintiff argues that the question of the Macintosh Portable computers either was, or could have been, presented to the PTO during the reexamination proceedings.

Defendant PC Guardian filed a request for an *inter partes* reexamination of the '794 patent on November 16, 2005. Tedesco Decl., at ex. Q, p.1. PC Guardian argued to the PTO that claims 1-14 of the '794 patent were anticipated and rendered obvious by thirteen combinations of prior art, not including the Macintosh Portables. *Id.* at ex. R, p. 3. On January 25, 2006, the PTO issued an Office Action in which it rejected PC Guardian's argument. *Id.* at ex. R, p.4. The PTO concluded that claims 1-14 of the '794 patent were patentable over the prior art of record and summarized the "reasons for patentability" as follows:

> Claims 1-14 are patentable over the prior art patents and printed publications because of the recitation of a specific security slot used in performing the locking method set forth.
> More specifically, there is no suggestion in the prior art for practicing the method steps of claim 1, which includes steps of engaging and moving a locking member to a

**United States District Court**
For the Northern District of California

locked position with respect to a slot in a wall and maintaining the locking configuration of the locking member by use of a pin which extends into the slot, with a particular slot in a portable electronic device and defined by a generally rectangular shape and by dimensions of about 3 mm x 7mm.

Tedesco Decl., at ex. R, p. 4.  In May, 2007 the PTO issued an Action Closing Prosecution, and in September, 2007, the PTO issued a Right of Appeal Notice.  No one appealed.

In December, 2007, PC Guardian served on plaintiff a new set of invalidity contentions, which included reference to the Macintosh Portables; plaintiff forwarded the invalidity contentions to the PTO on January 29, 2008.  Decl. of Brian Smith in Supp. of Pl. Mot. for Summ. J. ("Smith Decl. I"), at ex. 1B.  On April 4, 2008, the PTO issued a Notice of Intent to Issue *Inter Partes* Reexamination Certificate.  *Id.*, at ex. 1A.  In its Notice of Intent, the PTO once again confirmed the patentability of claims 1-14 of the '794 patent and repeated verbatim the summary of its statement of reasons from the January 25, 2006 Office Action.  *Id.*  On June 17, 2008, the PTO issued a reexamination certificate confirming the patentability of the '794 patent.  *Id.*, at ex. 17.

Plaintiff argues that under 35 U.S.C. § 315(c), defendant is now estopped from challenging the validity of the '794 patent because the PTO considered and rejected defendant's arguments during the reexamination proceeding.  The parties disagree on three points: (1) whether *inter partes* reexamination estoppel applies to all grounds raised for invalidity, irrespective of what prior art was before the PTO, (2) whether the Macintosh computers were raised as prior art during the reexamination, and (3) whether the Macintosh computers could have been raised during the reexamination.

Plaintiff contends that defendant is now estopped from re-raising the two grounds for obviousness that defendant asked the PTO to consider and that the PTO rejected (arguments that it was obvious to (1) combine non-computer-related lock art with computer-related lock art and (2) combine art that locked into an item but did not prevent someone from physically carrying the object away).  However, estoppel does not apply to grounds for invalidity based on prior art that was not and could not have been before the PTO; § 315(c) provides, "This subsection does not prevent the assertion of invalidity *based on newly discovered prior art unavailable to the third-party requester and the Patent and Trademark Office* at the time of the inter partes reexamination proceedings." (emphasis added).  All of defendant's current obviousness arguments are based on combinations of the Macintosh computers

United States District Court
For the Northern District of California

1    with fourteen items of prior art.  *See* PC Guardian's First Amended Disclosure of Preliminary Invalidity

2    Contentions, at 5.  [Docket No. 150] If the computers were "newly discovered prior art unavailable to"

3    PC Guardian (the third-party requester) during the *inter partes* reexamination, PC Guardian is not

4    estopped from challenging the validity of the '794 patent on the basis of the computers.

5         Plaintiff claims that the Macintosh Portable was not "newly discovered prior art unavailable to"

6    PC Guardian during the reexamination, because it was actually raised as potential prior art during the

7    reexamination proceeding, by submission of defendant PC Guardian's revised invalidity contentions to

8    the PTO in January, 2008.  Defendant responds that in reexamination proceedings, the PTO considers

9    only "patents or printed publications" (35 U.S.C. §§ 301, 311; Manual of Patent Examining Procedure

10   ("MPEP") § 2609(B); *see also* 35 U.S.C. § 102 (defining "printed publication" as a written description

11   dating from before the challenged patent was invented)), and the amended invalidity contentions do not

12   qualify as either.  Indeed, PC Guardian's invalidity contentions are not listed as prior art of record in

13   the June 17, 2008 reexamination certificate.  *See* Smith Decl. I, at ex. 17.[2]

14        Plaintiff also argues, in the alternative, that the issue of the Macintosh Portable was not "newly

15   discovered prior art unavailable to" defendant during the *inter partes* reexamination, since defendant

16   was aware of the slot dimensions of the Macintosh Portable but failed to present them to the PTO.  Both

17   parties agree, however, that there is no evidence of the dimensions of the Macintosh Portable security

18   slot other than the computer itself.[3]  *See* Def. Opp. to Pl. Mot. for Summ. J., at 17-18; *see also* Reply

19   in Supp. of Pl. Mot. for Summ. J., at 5.  Defendant contends that it could not have submitted the physical

20   computer to the PTO because, as described above, parties may disclose only "patents or printed

21   publications" during reexamination.  Plaintiff does not rebut defendant's contention that it could not

22   have submitted the physical computer to the PTO.

23

24        [2] Plaintiff also cites a document that is listed in the PTO's reexamination certificate as a printed
     publication of record: a publication entitled "Kensington Product Brochure for Kensington Apple Laser

25   Writer and Macintosh Portable Security Systems."  *Id.*  However, this document does not suggest that
     defendant argued to the PTO that it was obvious to combine the security slot of the Macintosh Portable

26   with other prior art.  The publication is a two-page product brochure that contains no information about
     the size and shape of the slot in the Macintosh Portable.  *See* Decl. of Brian A. E. Smith in Supp. of Pl.
     Opp. to Defs. Mot. for Summ. J. ("Smith Decl. II"), at ex. 2.

27

28        [3] Plaintiffs contend that even the physical sample offered by defendant does not provide this
     information.  Pl. Mot. for Summ. J., at 11.

United States District Court
For the Northern District of California

1    Accordingly, the Court finds that defendant is not estopped from challenging the validity of the

2    '794 patent on the basis of combinations of prior art with the Macintosh Portable.[4]

3

4    **B.     Obviousness**

5    Defendant seeks summary judgment on its claim that the '794 patent is invalid as obvious under

6    35 U.S.C. § 103.   Conversely, plaintiff contends that it is entitled to summary judgment on the

7    nonobviousness of the '794 patent.   Plaintiff raises a threshold evidentiary challenge to defendant's

8    invalidity claim.

9

10                   **i.     Evidentiary objection**

11   Plaintiff contends that defendant has submitted no admissible evidence in support of its claim

12   that the security slot of the Macintosh Portable is prior art.   Defendant responds that a Macintosh

13   Portable it bought on the internet auction site eBay is admissible to prove that a portable computer

14   security slot with dimensions close to 3mm x 7mm was prior art to the '794 patent.

15   An invention is prior art if it "was patented or described in a printed publication in this or a

16   foreign country or in public use or on sale in this country, more than one year prior to the date of the

17   application for patent in the United States." 35 U.S.C. § 102.   The priority date of the '794 patent was

18   January 24, 1992.   *See* Tedesco Decl., at ex. C.

19   Plaintiff argues that there is no evidence that the Macintosh Portable was on sale one year before

20   the priority date of the '794 patent, i.e. January 24, 1991.   Defendant has submitted a June, 1990 issue

21   ────────────────

22   [4] The Court is uncomfortable with this finding. The parties, and the PTO, took considerable time and trouble in pursuing the *inter partes* reexamination procedure, and this action was stayed, at defendant's request, for over 18 months. Defendant did not take advantage of several avenues open to

23   it during the reexamination procedure, such as appeal, despite its representation to the Court as late as July, 2007 that "PC Guardian will appeal the Examiner's actions."   *See* Joint Case Management

24   Statement, filed 7/6/07, at 6. The Court is not convinced that defendant could not, somehow, have gotten the Macintosh Portable information to the PTO had it actually wanted to. That said, however,

25   the Court recognizes that the *inter partes* reexamination procedure is a relatively new one, initiated in 1999 and significantly revised in 2002.   A recent analysis reported that only 30 *inter partes*

26   reexamination certificates had issued as of July, 2008, out of 308 total requests. *See* Andrew S. Baluch & Stephen B. Maebius, *The Surprising Efficacy of Inter Partes Reexaminations: An Analysis of the*

27   *Factors Responsible for its 73% Patent Kill Rate and How to Properly Defend Against It*, http://www.foley.com/files/tbl_s31Publications/FileUpload137/5234/InterPartesReexam.pdf.   Given

28   the relative uncertainty of the terrain, estoppel at this juncture appears unwise.

of *MacWeek* magazine describing Kensington Microware, Ltd.'s "security system" for the Macintosh Portable. *See* Tedesco Decl., at ex. FF p. 3 ("If you worry that your Macintosh Portable is a little too portable, a new product from Kensington Microware Ltd. will help keep it from wandering off."). The Court finds that this advertisement tends to prove that the Macintosh Portable was on sale before the priority date of the '794 patent.

Plaintiff also argues that there is no evidence that the Macintosh Portable model that was on sale before the priority date of the '794 patent had a security slot in the range of 3mm x 7mm. Defendant has submitted three Macintosh Portable computers obtained by counsel through eBay that bear the copyright date of 1989. *See* Tedesco Decl. ¶ 7. Defendant's expert also measured the security slots of the Macintosh Portable models in counsel's possession and found that they measure, on average, 3.3mm x 8.26 mm. *See id.*, at ex. BB, ¶ 14. The Court finds that this evidence tends to prove that the Macintosh Portable computer that was on the market before January, 1991 had a security slot in the range of 3mm x 7mm.

Finally, plaintiff argues that defendant's only evidence of the security slot's dimensions, the Macintosh Portable computers themselves, are inadmissible because they are unauthenticated and have no chain of custody. Defendant is correct that the computers are self-authenticating under Federal Rule of Evidence 902(7) because they are inscribed with the Macintosh Portable trade name. *See* Def. Opp. to Pl. Mot. for Summ. J., at 25; *see also* Fed. R. Evid. 902(7) advisory committee notes (citing cases in which trade inscriptions on wrappers were sufficient to authenticate a candy bar and a loaf of bread).[5] Defendant is also correct that any defect in the chain of custody for the computers goes to the weight of this evidence, not its admissibility. *See United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). Accordingly, the Macintosh Portable computers are not inadmissible by reason of defects in chain of custody or authentication.

### ii.    Merits

---

[5] Plaintiff relies on *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1204 (7th Cir. 1995) in arguing that trade inscriptions do not authenticate the items to which they are affixed. *Whitted* represents the minority view on this issue. *See* Kenneth S. Broun, *McCormick on Evidence*, § 229.1.

United States District Court
For the Northern District of California

1   Section 103 forbids issuance of a patent when "the differences between the subject matter sought

2   to be patented and the prior art are such that the subject matter as a whole would have been obvious at

3   the time the invention was made to a person having ordinary skill in the art to which said subject matter

4   pertains." A determination of obviousness under section 103 is a question of law based on underlying

5   findings of fact. *Oakley, Inc. v. Sunglass Hut Int'l.*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Obviousness

6   is assessed based on whether a "hypothetical person having ordinary skill in the art" with all prior art

7   references would regard the subject matter of the invention as obvious. *Standard Oil Co. v. American*

8   *Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

9   In *KSR International Co. v. Teleflex, Inc.*, __U.S.__, 127 S. Ct. 1727 (2007), the Supreme Court

10   rejected the Federal Circuit's rigid application of the "teaching, suggestion, motivation" test for

11   obviousness. Instead, the Court set forth several initial factors for performing an objective analysis of

12   obviousness:

13   Under § 103, the scope and content of the prior art are to be determined; differences
       between the prior art and the claims at issue are to be ascertained; and the level of
14     ordinary skill in the pertinent art resolved. Against this background the obviousness or
       nonobviousness of the subject matter is determined. Such secondary considerations as
15     commercial success, long felt but unsolved needs, failure of others, etc., might be
       utilized to give light to the circumstances surrounding the origin of the subject matter
16     sought to be patented.

17   *Id.* at 1734 (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966)). In addition to the

18   *Graham* factors, the Court in *KSR* stated that an obviousness analysis must consider:

19   interrelated teachings of multiple patents; the effect of demands known to the design
       community or present in the marketplace; and the background knowledge possessed by
20     a person having ordinary skill in the art, all in order to determine whether there was an
       apparent reason to combine the known elements in the fashion claimed by the patent at
21     issue.

22   *Id.* at 1740-41. The Court went on to affirm that "a patent composed of several elements is not proved

23   obvious merely by demonstrating that each of its elements was, independently, known in the prior art."

24   *Id.* at 1741. Nevertheless, "[t]he combination of familiar elements according to known methods is likely

25   to be obvious when it does no more than yield predictable results." *Id.* at 1739. Ultimately, the Court

26   "set forth an expansive and flexible approach," *id.* at 1739, that takes into account "common sense," *id.*

27   at 1742.

28   In this case, defendant argues that the security slot described in the '794 patent was an obvious

11

combination of two items of prior art:

1. U.S. Patent Number 3,785,183 to Sander ("the Sander patent"), which describes a movable locking member for engaging a generally rectangular security slot mounted on a portable electronic device, *see* Tedesco Decl., at ex. BB, ¶ 26; and

2. the security device on the Macintosh Portable computer, which featured a small rectangular opening in the back of the computer, *see* Tedesco Decl. ¶ 9, *see also id.* at ex. HH, p. 7.

Defendant contends that with knowledge of this prior art, and in light of market forces to prevent theft of portable electronic devices, the inventions patented by '794 would have been obvious to one skilled in the art.

The Court finds that defendant has not met its burden on summary judgment of establishing obviousness by clear and convincing evidence. Plaintiff has raised triable issues as to whether the prior art taught 1) the use of a pin in a movable lock head, and 2) the use of a generally rectangular security slot having dimensions of about 3mm x 7mm. According to plaintiff's evidence, neither the Macintosh Portable nor the Sander patent discloses the use of a pin. *See* Smith Decl., at ex. 13, ¶. 142:10-16, 110:10-16 (deposition testimony of defense expert Steven Velinsky); *see also* Decl. of David A. Dornfeld in Supp. of Pl. Opp. to Def. Mot. for Summ. J., at ex. A, ¶¶ 41-45 (responsive report of plaintiff's expert David A. Dornfeld). In addition, plaintiff's evidence indicates that neither the Macintosh Portable nor the Sander patent discloses a security slot with the characteristics described in the '794 patent. *See* Decl. of David A. Dornfeld in Supp. of Pl. Opp. to Def. Mot. for Summ. J., at ex. A, ¶¶ 41-45; *see also id.* ¶ 56; Smith Decl., at ex. 13, p. 132:1-2. Accordingly, the Court DENIES defendant's motion for summary judgment of invalidity of the '794 patent for obviousness.

Plaintiff also moves for summary judgment of nonobviousness. Plaintiff argues that defendant cannot prove obviousness because it has submitted no admissible evidence of prior art and because defendant's expert has admitted that the Sander patent did not reference a pin. As discussed above, plaintiff's authentication and chain of custody objections to the physical models of the Macintosh computers are unavailing. As for the purported admissions, plaintiffs mischaracterize the deposition testimony of defense expert Stephen Velinsky. He made the statements cited by plaintiff in response to a hypothetical posed by plaintiff's counsel about the construction of "pin," a key term at issue in this case. Velinsky accepted the hypothetical so as to answer counsel's questions; it is not accurate to

United States District Court
For the Northern District of California

12

describe his statements as admissions. *See, e.g.*, Smith Decl. I, at ex. 30, p. 147:14-148:7. Accordingly, plaintiff's motion for summary judgment as to the nonobviousness of the '794 patent is DENIED.

### C.     Indefiniteness

Both parties seek summary judgment on defendant's claim that the '794 patent is invalid because the phrase "about 3mm x 7mm" in claim 1 of the patent is indefinite.[6]

Every patent's specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. "[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citation omitted). The definiteness requirement "does not compel absolute clarity. Only claims not amenable to construction or insolubly ambiguous are indefinite." *Id.* (citation omitted). "Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning." *Id.*

"Definiteness problems often arise when words of degree are used in a claim. That some claim language may not be precise, however, does not automatically render a claim invalid." *Seattle Box Co., v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984). When a word of degree is used, the trial court must decide "whether one of ordinary skill in the art would understand what is claimed when the claim is read in light of the specification." *Id.* The challenging party must prove invalidity by clear and convincing evidence. *Datamize*, 417 F.3d at 1348.

---

[6] Plaintiff argues that defendants have waived their indefiniteness challenge by failing to raise it during claim construction or the PTO's *inter partes* reexamination. Plaintiff does not provide authority for the proposition that indefiniteness is waived if not raised at those stages in the proceeding. It cites *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1371 (Fed. Cir. 2008), but in that case, the Federal Circuit did not indicate whether the challenging party had raised indefiniteness during claim construction; the court did not consider the issue of waiver. In *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1368 (Fed. Cir. 2006), the Federal Circuit reasoned that indefiniteness analysis is "inextricably intertwined with claim construction" but the court did not consider waiver.

In any event, defendants could not have raised indefiniteness during the *inter partes* reexamination because in that proceeding, parties are limited to making indefiniteness arguments only with respect to subject matter added or deleted in the reexamination proceeding. *See* MPEP § 2658, 37 C.F.R. 1.906. The term "about 3mm x 7 mm" was neither added nor deleted during the *inter partes* reexamination.

United States District Court
For the Northern District of California

The Court finds that defendant has not met its burden of providing clear and convincing evidence that the language "about 3mm x 7mm" in claim 1 of the '794 patent is not amenable to construction or is insolubly ambiguous.  Plaintiff's expert David Dornfeld testified that one skilled in the art would understand that the term "about" accounts for minor variations in the manufacturing process:

> When one skilled in the art sees dimensions for a hole to be formed in a plastic case that are as small as 3mm x 7mm, that indicates a high level of precision.  The term "about" indicates that the security slot need not be exactly 3mm x 7mm, and can have standard manufacturing equipment responsible for forming the security slot.

Decl. of David Dornfeld in Supp. of Pl. Opp. to Def. Mot. for Summ. J., ¶ 52.  *See also* Smith Decl. II, at ex. 12, 69:17-25 (Dornfeld deposition testimony that "about" refers to "some allowable variation due to manufacturing tolerances or constraints associated with the location or manufacturer").  None of the deposition testimony cited by defendant casts serious doubt on Dornfeld's contention that one skilled in the art would understand  "about" as referring to some allowance for manufacturing variances.  *See, e.g.*, (Janet Dulsky (plaintiff's Federal Rule of Civil Procedure 30(b)(6) designee) testified that range refers to "[r]easonable manufacturing variances");  Tedesco Decl., at ex. P, 256:5 (Dornfeld testified that "[t]he machinists in our shop, students would understand that you'd like to get as close to 3 by 7 as reasonably and economically feasible.").

Defendant relies on *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200 (Fed. Cir. 1991) for the proposition that when "about" appears in a claim term, the patent must delineate the exact range covered by that term.  In *Amgen*, the Federal Circuit held that the language "at least about 160,000" was indefinite, but in that case, no expert testified as to a definite meaning for the term in the context of the prior art.  *Id.* at 1218.  In addition, the court limited its holding to the facts of that case.  *See id.* at 1218 ("In arriving at this conclusion, we caution that our holding that the term 'about' renders indefinite claims 4 and 6 should not be understood as ruling out any and all uses of this term in patent claims.");  *cf. BJ Serv. Co. v. Halliburton Energy Serv., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003) (upholding jury verdict that one of skill in the art would readily understand the range that the claim term 'about 0.06' was intended to include).

Accordingly, defendant's motion that the language "about 3mm x 7mm" is indefinite is DENIED and plaintiff's motion for summary judgment on this issue is GRANTED.

14

**D.     Anticipation**

Plaintiff seeks summary judgment on defendant's claim that pursuant to 35 U.S.C. § 102, the '794 patent is invalid as anticipated by prior art.  "Invalidity based upon lack of novelty (often called 'anticipation') requires that the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee."  *Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999).

Defendant alleges that subject matter disclaimed during the prosecution of U.S. Patent No. 5,381,685 ("the '685 patent") anticipates claims 1, 4, 5, 7 and 9 of the '794 patent.  *See* PC Guardian's First Amended Disclosure of Preliminary Invalidity Contentions, at 4. [Docket No. 150] Assuming that there was a disclaimer and that a disclaimer constitutes prior art (plaintiff contests both points), defendant does not explain why it did not raise this prior art during the *inter partes* reexamination. Defendant failed to do so and is now estopped from challenging the validity of the '794 patent on this ground.  *See* 35 U.S.C. § 315(c).

In the amended invalidity contentions, defendant disclosed no other grounds for invalidating the '794 patent due to anticipation.  It cannot raise new grounds for invalidity now because Local Patent Rule 3-3 bars it from raising new items of prior art at this stage in the proceeding.  Accordingly, the Court GRANTS plaintiff summary judgment on this issue.

**3.     Inequitable conduct**

Both parties move for summary judgment on the issue of whether the '794 patent is unenforceable due to inequitable conduct by plaintiff.

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution."  *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006).  To establish inequitable conduct based on failure to disclose prior art, a party "must offer clear and convincing proof of: 1) prior art or information that is material; 2) knowledge chargeable to applicant of that prior art or information and of its materiality; and 3) failure

of the applicant to disclose the art or information resulting from an intent to mislead the PTO." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir.1987). "[A] breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." *Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990).

Defendants contend that plaintiff engaged in inequitable conduct during the prosecution of U.S. Patent Nos. 7,121,125 ("the '125 patent"), and 7,100,403 ("the '403 patent") by failing to disclose the dimensions of the Macintosh Portable security slot to the PTO, and that this inequitable conduct makes the '794 patent unenforceable under what defendants refer to as the doctrine of "infectious unenforceability." According to defendants, the patents are related because all three descend from U.S. Patent No. 6,000,251 ("the '251 patent") and they all disclose the limitation of "a small (preferably about 3 by 7 millimeter) slot." *See* Tedesco Decl., exs. C-E.

### A.     The '403 patent

Inequitable conduct "with respect to one or more patents in a family can infect related applications." *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1230 (Fed. Cir. 2007). Defendants, however, overstate the degree to which inequitable conduct in the prosecution of one patent can "infect" the enforceability of other patents. The '403 patent is related to the '794 patent only because both descend from the '251 patent, but defendants do not allege inequitable conduct with regard to the '251 patent. Furthermore, the *application* for the '403 patent was filed on May 4, 2004, more than a year after the '794 patent was issued, on April 29, 2003. *See* Tedesco Decl., at exs. D, E. Defendants' allegations about inequitable conduct during the prosecution of the '403 patent therefore have no bearing on the enforceability of the '794 patent.

### B.     The '125 patent

The '125 and '794 patents are more closely related because the '794 patent is a continuation of the '125 patent. *See* Tedesco Decl., at ex. C. The chronology of the two patents is as follows:

November 12, 1999:   '125 patent application filed
June 23, 2000:          '794 patent application filed

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| April 29, 2003: | '794 patent issued |
| October 17, 2006: | '125 patent issued |

*See id.*, at exs. C, E.

Defendants contend that even though the '794 patent issued before the '125 patent, the earlier patent is infected by the later one because both applications were pending at the same time. Defendants cite no authority supporting their theory that a patent can be tainted merely because its application is pending concurrently with that of another patent. In the cases on which they rely, the "infected" patents were all issued *after* the patent that was found unenforceable due to inequitable conduct. *See Agfa Corp. v. Creo Products Inc.,* 451 F.3d 1366, 1379 (Fed. Cir. 2006); *Consol. Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F.2d 804, 811 (Fed. Cir. 1990); *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 583, 595 (D. Del. 2006).

Moreover, defendants' theory is contrary to the rationale for the doctrine of infectious unenforceability. In *Baxter Intern., Inc. v. McGaw, Inc.* the Federal Circuit discussed the doctrine:

> [I]n determining inequitable conduct, a trial court may look beyond the final claims to their antecedents. Claims are not born, and do not live, in isolation. Each is related to other claims, to the specification and drawings and to earlier or later versions of itself in light of amendments made to it.

*Baxter Intern., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1331 (Fed. Cir. 1998) (discussing *Fox*) (citations omitted). As the discussion in *Baxter* makes clear, the doctrine only applies if the "infected" claim is an antecedent of the claim in question. Here, the '125 patent was not an antecedent to the '794 patent because the '125 patent issued after the '794 patent. The later patent therefore cannot have infected the earlier patent. Accordingly, defendants' summary judgment motion for unenforceability based on inequitable conduct during the prosecution of the '125 and '403 patents is DENIED.

## C.  The '794 patent

Plaintiff argues that it should be awarded summary judgment of no inequitable conduct relating to the '794 patent. Plaintiff claims that there is no triable issue as to whether plaintiff engaged in inequitable conduct during the prosecution of the '794 patent. The Court disagrees. There is evidence that plaintiff had knowledge of the slot of the Macintosh Portable as early as 1990. *See* Tedesco Decl., at ex. FF p. 3 (June, 1990 issue of *MacWeek* magazine describing Kensington Microware, Ltd.'s

17

"security system" for the Macintosh Portable).  Plaintiff does not contend that it disclosed the Macintosh Portable slot to the PTO prior to the issuance of the '794 patent in 2003.  As discussed above, there are triable issues as to whether the dimensions of the slot were material.  The Court therefore finds that defendants have met their burden of "designat[ing] 'specific facts showing there is a genuine issue for trial.'"  *See Celotex Corp.*, 477 U.S. at 324.  Accordingly, plaintiff's motion for summary judgment on no inequitable conduct in the '794 prosecution is DENIED.

**4.      Infringement**

Plaintiff moves for summary judgment that defendants infringe and induce infringement of the '794 patent.

**A.      Direct infringement**

Section 271(a) of the Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit. *Acco Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

Here, defendants' accused device admittedly does not include a "a generally rectangular security slot," as required in the asserted claims of the '794 patent, so the parties have all focused on the theory of induced infringement.  In the current motions, however, which are the fifth and sixth dispositive motions filed in this action, plaintiff argues that defendants directly infringe because they actually use the accused devices to secure their portable computers.  If all the other elements of the patent are included in the accused device, then defendants' use of the device would constitute direct infringement under Section 271(a).

This aspect of plaintiff's current motion on this point is patently frivolous.  In the March 19, 2008 Order, resolving the fourth and fifth dispositive motions, the Court held that  there were triable questions as to whether the flanged tab of defendants' accused product is a "pin" as claimed in the '794 patent.  It is nonsensical for plaintiff to now argue that defendants conceded that their product infringes

18

the '794 patent.[7]  This Court intends to adjudicate this case on the merits; plaintiff's tactic of stating in a footnote that it incorporates by reference "its summary judgment motion and the declarations and exhibits thereto" and summarily deeming a central dispute in this case waived is not helpful.  *See* Pl. Mot. for Summ. J., at 16 n.3.

Plaintiff's motion on direct infringement is DENIED.

### B.     Induced infringement

Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  In order to prevail on an inducement claim, the patentee must establish "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.  Specific intent requires a showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements."  *Acco Brands*, 501 F.3d at 1312 (citations omitted).

As discussed above, the Court finds that plaintiff has not proven that use of defendants' product infringes the '794 patent.   Accordingly, plaintiff cannot establish that defendants have induced infringement.  Plaintiff's motion on induced infringement is DENIED.

### C.     Claim construction

The Court held on December 5, 2005 that it would not construe the term "pin" beyond its plain meaning.  *See* Order Re: Claim Construction [Docket No. 112].  Plaintiff urges the Court to reconsider its ruling in light of a recent decision by the Federal Circuit, *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008) (en banc).  In *O2 Micro*, the Federal Circuit held that a determination that a claim term "has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning

_____

[7] According to plaintiff, defendants conceded that their devices infringe the '794 patent because plaintiff submitted infringement claims in conjunction with its previous summary judgment motion and defendants, by failing to dispute them, admitted those allegations.  *See id.*, at 16 n.3.

United States District Court
For the Northern District of California

does not resolve the parties' dispute."  521 F.3d at 1361.

*O2 Micro* does not mandate that the Court revisit its claim construction.  In *O2 Micro*, the parties disputed the scope of the asserted claim term, *see id.*, whereas here, the claim construction dispute did not concern the meaning of the word "pin," *see* Order Re: Claim Construction, at *3 ("The dispute centers around the construction of the term 'maintaining' as 'keeping' or 'preventing.'").  Rather, the controversy regarding the pin in this case is a factual dispute about how similar the flanged tab of defendants' products is to the pin in the '794 patent, not about the meaning of the word "pin."  *See* March 19 Order, at 9 ("Accordingly, the Court finds that there is a genuine issue of material fact as to whether the flanged tab is exactly the same as the pins in the '794 patent, is similar enough to the pins so as to be equivalent, or is so different that the accused products cannot infringe the '794 patent.") (citations omitted).  Plaintiff's motion for reconsideration of the Court's claim construction order is DENIED.

**5.      Defendants' affirmative defenses**

Plaintiff argues that it is entitled to summary judgment on defendants' affirmative defenses of prosecution history estoppel, patent exhaustion and implied license.[8]

**A.      Prosecution history estoppel**

"[P]rosecution history estoppel can occur during prosecution in one of two ways, either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')."  *Conoco, Inc. v. Energy & Environmental Intern., L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006).  "When a patentee makes a narrowing amendment to a claim, the patent holder has the burden to demonstrate that the reason for the amendment was unrelated to patentability (e.g., to avoid prior art)."  *Id.*  "To invoke argument-based estoppel, however, the prosecution history must evince a clear and unmistakable surrender of subject matter."  *Id.*  (citation omitted).

Plaintiff argues that defendants have neither asserted nor presented evidence of any such

_____

[8]  Defendants' motion to dismiss its antitrust counterclaim is addressed in a separate order.

1    statements made by plaintiff.  The Court agrees.  Defendants's citation to *Elkay Mfg. Co. v. Ebco Mfg.*

2    *Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) (limitation in earlier patent applies to that patent's continuation

3    patents), is inapposite.  Nor did claim construction arguments plaintiff made to the PTO about the

4    meaning of the word "pin" have the effect of limiting a claim by narrowing it or surrendering elements.

5    Defendants have not cited evidence of limitations plaintiff imposed on the '794 patent during its

6    prosecution or of claims plaintiff surrendered during the same process.  Accordingly, plaintiff's motion

7    for summary judgment on this issue is GRANTED.

8

9    **B.      Patent exhaustion and implied license**

10   The defense of "patent exhaustion," commonly referred to as the "first sale" doctrine, provides

11   that "the initial authorized sale of a patented item terminates all patent rights to that item."  *Quanta*

12   *Computer, Inc. v. LG Electronics, Inc.*, __U.S.__, 128 S.Ct. 2109, 2115 (2008).  This bar on patent

13   restrictions following the sale of an item applies when the item "sufficiently embodies the patent – even

14   if it does not completely practice the patent – such that its only and intended use is to be finished under

15   the terms of the patent."  *Id.* at 2116-17 (citation omitted).

16   Plaintiff argues that defendants have presented no evidence to support their theory that the entire

17   invention of the '794 patent claim is embodied by the security slot.  Defendants are correct that in its

18   Order granting defendants' leave to file an amended answer, the Court found that defendants had

19   "demonstrated that there remain genuine issues as to whether the slot substantially embodies the '794

20   patent."  *See* Order Grant. Leave to Am., at 4.  [Docket No. 205]  In support of their motion for leave

21   to file an amended answer, defendants cited evidence in support of their affirmative defense, including

22   statements of the PTO examiner and the report of defense expert Steven Velinsky.  *See* Def. Reply in

23   Supp. of Mot. for Leave to Amend. Answer, at 4-5.  [Docket No. 203]  Plaintiff is therefore incorrect

24   that defendants have provided no evidence in support of their affirmative defense.  Accordingly,

25   plaintiff's motion for summary judgment on this issue is DENIED.

26

27

28

**6.      Willful infringement**

Defendants seek summary judgment on plaintiff's claim that defendants' infringement of the '794 patent was willful.  Defendants' only argument in this regard is that *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) stands for the proposition that a willful infringement claim cannot be based on alleged conduct after the filing of the lawsuit if the patentee does not file for a preliminary injunction.  The Federal Circuit did not hold, however, that only conduct after the patentee files for a preliminary injunction may be considered as the basis of a willfulness claim.  *See id* at 1374 ("whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case.").  Accordingly, defendants' motion for summary judgment on this issue is DENIED.

**7.      Evidentiary objection**

On October 21, the day before oral argument in this matter, plaintiff submitted objections to declarations filed by defendants in support of their motion for summary judgment.  [Docket No. 285]  Plaintiff's objections are DENIED as untimely, without prejudice to plaintiff raising them again at a later stage in the proceeding.

**IT IS SO ORDERED.**

Dated: 12/4/08

_____
SUSAN ILLSTON
United States District Judge

22